(No. 10905.)

## THE DECATUR RAILWAY AND LIGHT COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 21, 1916—Rehearing denied Feb. 8, 1917.*

1. WORKMEN'S COMPENSATION—*what is principal consideration to distinguish employee from independent contractor.* The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor.

2. SAME—*what does not show that injured person was an independent contractor.* The fact that a day laborer employed by a street railway company and belonging to its hospital association makes an oral contract with the company's engineer to unload coal at the plant at five cents a ton, using the company's tools but hiring his own help, does not show that he was an independent contractor and not an employee, where his work was to be done under the direction of the head fireman and he was subject to discharge without notice, and where the company continued to retain his hospital dues from his pay, furnished free medical services and gave him a pass, which was a favor given employees, only.

3. SAME—*when an employee is injured in the course of his employment.* If there is evidence that an employee whose business was to unload coal at his employer's plant was sometimes sent to the railroad yards to see about getting cars of coal switched to the plant and that on the occasion of his injury he had gone to the yards for that purpose, then his act in getting upon the rear step of a switch engine to communicate his business to the switchmen standing thereon is within the course of his employment, and if he falls or is thrown from the engine and is injured, the injury is one received in the course of his employment.

4. SAME—*employer is liable for an injury to employee in the course of employment regardless of question of negligence.* The liability imposed by the Workmen's Compensation act has no connection with the negligence of either the employer or the employee, and an injury arising out of and in the course of the employment creates the liability without any question of fault of either party.

5. SAME—*when amount of the award is properly determined on basis of full working year.* If there is evidence that the men employed to do the work in which an injured employee was engaged

worked substantially every working day in the year, the amount of the award is properly based on paragraph (*d*) of section 10 of the Workmen's Compensation act of 1913 and not on paragraph (*e*) of said section.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

CHARLES C. LEFORGEE, THOMAS W. SAMUELS, and GEORGE W. BLACK, for plaintiff in error.

McDAVID & MONROE, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Arthur W. Mulverhill was run over by a freight train on the Wabash railroad and injured so that both of his legs had to be amputated. He presented a claim for compensation against the Decatur Railway and Light Company, and the Industrial Board, on a petition for a review of the award of the committee of arbitration, made an award of $2400, payable in weekly installments of $5.77, and a pension of $16 a month from the expiration of such weekly payments for the rest of his life. On *certiorari* from the circuit court of Macon county the award was confirmed, and this writ of error is prosecuted by the Decatur Railway and Light Company to reverse that judgment.

The grounds urged for reversal are, that Mulverhill was not an employee of the plaintiff in error but was an independent contractor; that if he was such employee his injury did not arise out of and in the course of his employment; and that the amount is excessive.

In the summer of 1914 Mulverhill was in the employ of the plaintiff in error as a laborer on the streets at seventeen and one-half cents an hour, working ten hours a day. He belonged to the hospital association of the plaintiff in error's employees, and fifty cents a month was deducted from his wages by the company for the association. In Septem-

ber he began working under a contract for unloading coal for the company at its power plant. The agreement, which was oral, was made with the chief engineer of the company. Mulverhill was to receive five cents a ton for unloading the coal and was to see that the house was kept full of coal while there was coal to unload. The cars loaded with coal were set and Mulverhill unloaded the coal where he was told to, hiring and paying his own help, the company furnishing all the tools. The chief engineer had the power to annul the contract at any time without notice to Mulverhill and to control the scooping of the coal. There is evidence tending to show that the plaintiff in error retained from Mulverhill's wages for September the hospital dues for that month and furnished him free medical services during October, and also that during the time he was shoveling coal he was furnished a pass by the plaintiff in error, and that passes were only given to employees of the company.

The plaintiff in error insists that Mulverhill was an independent contractor, because he was not in the unloading of the coal under the supervision and direction of the plaintiff in error as to the manner in which the work should be done; that he hired and paid his own help and that he was paid by the ton. On the other hand, there was evidence that it was the duty of Mulverhill to keep the bins full; that the head fireman directed him where to scoop the coal, when to quit, and when there was not enough coal in certain bins told him to scoop more, and that Mulverhill was under his orders to keep the bins filled. He was subject to discharge at any time without notice and without a reason. The right to control the manner of doing the work is the principal consideration which determines whether the worker is an employee or an independent contractor. This work was very simple. No control would ordinarily be required except to direct where the coal should be unloaded, and this control was exercised. There was nothing in the contract indicating that the company surrendered the right

to control the manner in which the unloading should be done.   It retained the right to discharge Mulverhill on the instant.   The method of payment was not inconsistent with a contract of hiring, and the retention of hospital dues and the giving of a pass tended to establish the relation of employer and employee.   There was evidence from which the Industrial Board might reasonably find that Mulverhill was an employee of the plaintiff in error.

The plaintiff in error relies on the case of *Chicago, Rock Island and Pacific Railway Co.* v. *Bond*, 240 U. S. 449, which involved a contract for handling all the coal required by the railroad company at Enid and placing it in the coal-chute pockets of the company; for breaking all coal to the size of four-inch cubes or less before delivery to chutes for engine use; to unload all coal for stationary boilers; to unload wood from cars to storage boilers; to load cinders to cars and to unload sand from cars at points designated by the company, the service to be paid for in certain designated numbers of cents a ton, cord or yard, as the case might be.   The contractor having been run over and killed, suit was brought by his administrator to recover damages for his death, and the question arose whether he was an employee under the Federal Employers' Liability act.   It was held that he was a contractor and not an employee.   But the contract was much more extensive than in this case. It was in writing and expressly stated that the contractor should be deemed and held as the original contractor, and that the railway company reserved and held no control over him in the doing of the work other than the results to be accomplished, and it was to continue until terminated by either party upon fifteen days' notice or by the failure of the contractor to perform his duties, at the option of the company, without being liable in damages therefor, of which failure the company should be the sole judge.   That case is not authority for holding a contract to unload coal at a fixed price per ton, with the tools of the employer, subject

to termination at any time and with no further 'provision, to be other than an ordinary contract of hire.

It is argued that the injury did not arise out of and in the course of Mulverhill's employment. On the day of the accident Mulverhill had been unloading coal during the forenoon. About half-past nine he testified that he notified the engineer that he was going to be out of coal, and the engineer told him that he had notified the switchmen by telephone to bring some over. About two o'clock the coal was all unloaded, Mulverhill's assistants went home, and Mulverhill went to the railroad yards to see about getting coal. He saw a train of about thirty cars coming west with coal, with a switchman standing on the front of the engine. Mulverhill stepped on the foot-board on the rear of the engine and soon after was jerked or fell off and was run over and injured. Mulverhill's testimony tended to show that the chief engineer sometimes directed him to go down and request the switchmen to bring the coal. This statement was denied by the chief engineer, but we cannot weigh the testimony. It was shown that Mulverhill was in the habit of seeing the switching crew and giving them directions about placing the cars of coal, and that on other occasions he had gone down to the yards to get them to bring up coal. It might be inferred from this evidence, together with his testimony that he was directed to go down and get the switchmen to bring coal, that such acts were in the course of his employment. It is argued that getting on the moving train was clearly an act entirely outside of and unconnected with his employment. If he had gone down to the yards in the course of his duty to request the switching crew to bring the cars of coal, then his act in getting on the train, even though reckless, cannot be said not to have been in the course of his employment. The switchmen whom it was his business to see, were on the train, which was moving toward another part of the yards. It may have seemed to Mulverhill that the quickest way to

get in communication with the switchmen was to board the train, and his act in doing so, even though grossly negligent, cannot be said to have been outside the course of his employment. The liability imposed by the Workmen's Compensation act has no connection with the negligence of either the employer or the employee. An injury arising out of and in the course of the employment creates the liability without any question of fault on the part of either the employer or the employee. If in the act of getting on the train Mulverhill was attempting to perform a duty to his employer which his employment imposed upon him, then the injury resulting arose out of and in the course of his employment, and the fact that he was negligent was not material to the question of the employer's liability. There is credible evidence tending to sustain Mulverhill's claim, and the circuit court was not authorized to overrule the Industrial Board as to its weight.

The amount of the award was determined by the Industrial Board under paragraph (d) of section 10 of the Workmen's Compensation act of 1913, which was in force when the accident occurred. That paragraph provides that "as to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as three hundred times the average daily earnings in such computation." The plaintiff in error argues that the paragraph which should have been applied was paragraph (e) of section 10, which is as follows: "As to employees in employments in which it is the custom to operate for a part of the whole number of working days in each year, such number, if the annual earnings are not otherwise determinable, shall be used instead of three hundred as a basis for computing the annual earnings, provided the minimum number of days which shall be so used for the basis of the year's work shall not be less than two hundred." This claim cannot be sustained. There was evi-

dence tending to show that the work in which Mulverhill was engaged was required to be done during the whole year and that his employment was paying him two dollars a day. The coal delivered was for the plant supplying power by which the cars of the plaintiff in error were propelled and also furnishing heat. The evidence of the chief engineer showed that the men worked shoveling coal seven days a week, and about forty tons a day was a fair average of their work. The work was done substantially every working day in the year and not on a part of them, only.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*