(No. 11355.—Reversed and remanded.)

THE NORTHERN ILLINOIS LIGHT AND TRACTION COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL BOARD OF ILLINOIS et al. Defendants in Error.

*Opinion filed June 21, 1917—Rehearing denied October 4, 1917.*

1. WORKMEN'S COMPENSATION—*burden is on administrator to prove injury occurred in course of employment.* In a proceeding under the Workmen's Compensation act the burden is on the administrator of the deceased employee to prove that the accident arose out of and in the course of the employment.

2. SAME—*whether there is any evidence tending to prove the accident arose out of employment is a question of law.* In a proceeding under the Workmen's Compensation act, if there is competent evidence in the record which, standing alone, fairly tends to prove that the accident arose out of and in the course of the employment, neither the circuit court nor the Supreme Court may question its sufficiency, but whether there is any evidence in the record which fairly tends to establish that fact is a question of law for the determination of the court.

3. SAME—*when injury to employee electrocuted in transformer room does not arise out of employment.* Where an employee of a light and traction company who was employed as fireman in the boiler room, to which all his duties were confined, enters the transformer room, which all persons except the workmen particularly employed there were forbidden to enter by placards conspicuously posted, of which he was aware, and is electrocuted by coming in contact with a high-power wire, the accident does not arise out of and in the course of his employment where he entered the room merely for general conversation.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

DUNCAN & O'CONOR, for plaintiff in error.

COLEMAN & COLEMAN, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Stuart Duncan, administrator of the estate of Anton Klimek, deceased, one of the defendants in error, filed his petition with the Industrial Board to fix compensation for

the death of his intestate. The deceased was in the employ of the Northern Illinois Light and Traction Company, the plaintiff in error, at the time he received the injury which resulted in his death. The Industrial Board awarded compensation at the rate of $31.25 per month for a period of 96 months, beginning September 14, 1914. Upon review of the record of the Industrial Board by the circuit court of LaSalle county the decision of the Industrial Board was confirmed, and the court certified that this is a proper case to be reviewed by this court.

The only question raised on the record is whether or not the deceased met his death in an accident arising out of and in the course of his employment.

On September 13, 1914, plaintiff in error was operating a power house in the city of LaSalle in which electricity was generated. The power house is a one-story building divided into three compartments. In the north end is a boiler room, 100 feet long by 45 feet wide. Immediately south of it is the engine room, 72 feet long by 50 feet wide. In a small wing at the southeast corner of the building is the transformer room, 22 feet by 18 feet. In the transformer room lightning arrester wires were located along the south wall and were guarded by a gas-pipe fence 42 inches high and 28 inches distant from them. These wires carried an electric current of high voltage. The entrance from the engine room to the transformer room was also guarded by a gas-pipe fence 42 inches high. At one end of the fence was a narrow gate consisting of gas pipe, which was opened by telescoping the pipes of the gate into the pipes of the fence. Various signs were hung in the transformer room in plain sight from the engine room, containing warning to employees who had no duties to perform in the transformer room. One of these signs just inside the fence read, "Keep out." Another read, "Danger.—33,000 volts.—Keep Out." On this sign was painted prominently a skull and cross-bones. There were other signs in this room of like

import. Anton Klimek had been in the employ of plaintiff in error in and about this plant for several years and for the four years preceding his death had been engaged in the capacity of day fireman or head fireman. While the plant was in operation it was his duty to fire the boilers and see that steam was kept up, and this did not take him out of the boiler room. The evidence shows, without contradiction, that when the plant was in operation he had no duties to perform in any other place. While the boilers were in operation it appears from the evidence that he was required to shovel coal constantly for a period of fifteen minutes and then there would be an interval of fifteen minutes when he had nothing to do except to watch the boilers and see that they were operating properly. During this interval it was his custom, if he desired to do so, to go into the engine room, and, if occasion required it, to go to the toilet, which was situated in the southeast corner of the engine room, about eight or ten feet south of the gate leading into the transformer room. At half-past nine o'clock on September 13, 1914, the deceased left the boiler room and went into the transformer room, where three workmen were engaged in changing a conduit in that room in connection with changing the transformers. When he entered the room he went to the gas-pipe fence extending east and west parallel with the south wall of the room and leaned against it and began talking with one of the workmen about the war in Europe. After he had been in the transformer room about five minutes, and while discussing the war, he extended his arm over the fence and his hand came in contact with one of the lightning arrester wires carrying about 30,000 volts of electricity and which was about 28 inches distant from the fence upon which he was leaning. As a result of the shock he was instantly killed.

There is no evidence in the record showing why the deceased went into the transformer room. One theory of the defendants in error is that he had gone to the toilet and

had entered the transformer room on his way back to the boiler room. The toilet was in the engine room and there was no occasion for him to go into the transformer room, either on his way to or from the toilet. Whether he had been to the toilet is purely speculative, as no one saw him go there. On the other hand, the workman with whom he was engaged in conversation when killed testified that he came in directly from the engine room. Another theory is that the superintendent of the plant had been in and out of the transformer room a number of times that morning directing the workmen who were carrying on the work of changing the transformer, and that the deceased, desiring to see him on some matter connected with his work in the boiler room, sought him in the transformer room. This also is purely speculative. Had the deceased been looking for the superintendent he could have seen that he was not in the transformer room without entering that room. He made no inquiry for the superintendent but began to converse with one of the workmen with reference to the war and as to which side would win. The superintendent, at the time the deceased entered the transformer room and at the time the accident occurred, was sitting at his desk in the engine room, where he could easily have been observed had anyone been looking for him. He did not see the deceased go through the engine room and enter the transformer room although he was where he could have been seen by the deceased. It was shown that all the workmen about the plant were forbidden to enter the transformer room unless specially directed or the performance of their duties required them to be there, and it also appears that this rule was rigidly enforced. Defendants in error contend that the record discloses that this rule was not observed, but that it was customary for the employees to go in and out of the transformer room at will or to pass through and go out a door at the east end of the room. While there were some expressions used by some of the witnesses which

tend to support this contention, a careful analysis of the testimony of each witness discloses, without question, that none of the workmen entered the room or passed through it except when they were engaged in some work in the room or their duties required them to be there or to pass through. In the performance of his duties the engineer, whose station was in the engine room, was required to go into the transformer room frequently to observe the temperature and to attend to the oiling of the apparatus used there. The deceased had frequently been called upon to take the place of the engineer when he was unable to be there, and in the performance of the duties of the engineer he was required to frequently enter the transformer room. He was able to read and write and was familiar with the regulations in force at the plant in reference to entering the transformer room. He was familiar with the apparatus and knew the dangerous character of the wires in this room.

The burden was on the administrator to prove that the accident arose out of and in the course of the employment. (*Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 454; *Ohio Building Vault Co.* v. *Industrial Board,* 277 id. 96.) If there is competent evidence in the record which, standing alone, fairly tends to prove that the accident arose out of and in the course of the employment, neither the circuit court nor this court may question its sufficiency, but whether there is any evidence in the record which fairly tends to establish that fact is a question of law for the determination of the court. (*Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11; *Parker-Washington Co.* v. *Industrial Board,* 274 id. 498.) There is no evidence in this record which fairly tends to prove that the accident arose out of and in the course of the employment of the deceased. The transformer room in the plant of the plaintiff in error was a place of great danger. Realizing this, plaintiff in error properly took every precaution to exclude the public and all of its employees except

those whose duties required them to enter or pass through the room. There was thus created within the plant a zone which the deceased was forbidden to enter. In disobedience of the rules of plaintiff in error he entered this zone, and the accident which resulted in injury to him cannot be said to have arisen out of and in the course of his employment.

The judgment of the circuit court is reversed and the cause is remanded.        *Reversed and remanded.*