Hibberd v. Hughey.

---

RICHARD HIBBERD ET AL., APPELLEES, V. JAMES A. HUGHEY, APPELLANT.

FILED JULY 13, 1923. No. 23412.

1. **Master and Servant:** DEPARTURE FROM EMPLOYMENT. Mere disobedience by the servant of the master's order regarding the manner in which work is to be performed will not operate to remove the servant from the sphere of his duties.

2. ———: ———. Disobedience of a positive order as to the place where work is to be performed, resulting in injury to the servant arising out of the place selected by him, constitutes a departure from his employment, and such injury cannot be said to "arise out of and in the course of" his employment within the meaning of the employers' liability law.

3. **Evidence** examined, and *held* to support the finding of the district court.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Drake & Drake,* for appellant.

*W. D. Oldham* and *W. E. Balcom,* contra.

Heard before MORRISSEY, C. J., LETTON and GOOD, JJ., BLACKLEDGE, COLBY and REDICK, District Judges.

REDICK, District Judge.

Appellant was allowed compensation by the commissioner, but the award was set aside by the district court, and from that judgment claimant appeals.

The facts are that appellant was in the employ of Hibberd Brick Company engaged in the construction of a brick building for appellee Brigham. No insurance was procured by the contractors and so the owner is joined. Appellant was employed as a common laborer and his work just before the accident was carrying mud boards from one part of the building to another, on the second floor. A material hoist was being installed, consisting of two cages balancing each other and connected by a cable passing over a pulley or drum, and so arranged that when one cage was up the other would be down. The work had progressed to a point where it was necessary to adjust the position of the cages so that when they were at rest material could be wheeled on and off at the floor levels. The cage at the second floor had become lodged at a point several inches above the floor and it was necessary to jar it down even with, but not below, the floor. The floors had not been laid, so the spaces were open between the joists on the first and second stories. Charlie Hibberd, one of the appellees, from the first floor called to appellant to bring the elevator down level with the second floor (just what the order was is in dispute and will be discussed later). Appellant put his foot on it, but was unable to move it, and then stepped into the cage and jumped on it, with the result that the cable slipped through the clamps by which it was attached to the cage, and it was precipitated with appellant into the basement, a distance of 16 to 20 feet, and appellant was injured.

The claim of appellees is that prior to the accident all

employees were ordered to keep off the elevator, and that in giving the order to appellant he expressly told him not to get on it; and two questions are presented: (1) Did the injuries to Hughey arise out of and in the course of the employment? (2) Was Hughey guilty of wilful negligence barring compensation?

The lower court answered the first question in the negative and the second in the affirmative.

The elevator was being installed; it had not been in use prior to the accident; the floor of the cage was a short distance above the floor of the second story; it was necessary to have the floor of the cage level with the second floor of the building so that the other cage could be so adjusted that it would be on a level with the first floor; the manner of doing this is not described, but it seems clear that, as one cage balanced the other, their relative positions were governed by the length of the cable connecting them, which being determined, the cable would be attached to the top of the respective cages. When operated therefore, one cage would always be at the first floor and the other at the second. The operation appellant was required to accomplish was to lower the cage to the second floor level—not below it. To accomplish this it is evident that it would be necessary to withdraw the force applied for the purpose, as soon as the cage had descended to the proper place. There was no mechanism provided for stopping the cages; they were to be operated by electricity, which had not been attached; they were not for workmen to ride in. How appellant could have expected the cage to stop at the point desired with the moving force of his own weight still operating is difficult to understand. True, he may have thought the cage would stop when the cable became taut, but the cable was the very thing which was being adjusted, and he had no reason to suppose that the cable was just the proper length—quite the reverse.

We have, up to this point, a servant adopting a method of accomplishing the result desired by the master,

which, at most, *might* be successful, but which, owing to the nature of the case, probably would not be. The general rule is that an injury arises out of his employment when the servant is performing some service for the master, although in a *manner* contrary to his instructions; and this because he is acting within the scope of his employment and his departure from instructions were mere acts of disobedience.

There is evidence in the record, however, that appellant was directed not to get onto the elevator at the very time he was told to lower it to the floor level. If this fact is proved, then another element enters the problem, viz., that the servant was disobedient as to the place he should perform his work.

In *Gacesa v. Consumers Power Co.,* 220 Mich 338, after a discussion of cases, the rule in England was said to be: "Where the employee violates instructions as to the manner in which he is to perform his labor, he is not thereby removed from the sphere of his employment, and that if he is injured the accident arises out of and in the course of his employment, that where the employee violates his instructions as to the place in which he is to perform his labor he thereby removes himself from the sphere of his employment, and if there injured such accident does not arise out of and in the course of his employment"—and the same was adopted by the court as correct. In that case the employee had disobeyed the order of his employer to report each day for instructions as to the day's work, and went to work at a place different from the one he had worked the day before, and received injuries arising out of the place where he worked; and the rule was applied that, by his disobedience of the order, he had removed himself from the sphere of his employment.

In *Fournier's Case,* 120 Me. 236, the servant, for a purpose connected with his duties, attempted to enter the second story of a warehouse through a trap-door by means of a rope operated by a hoisting engine, and was

injured. He and other servants had received orders not to use the rope for that purpose, and the court, by Wilson, J., in holding that he did not receive his injuries "in the course of" his employment, said:

"The words 'in the course of the employment' relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto. *Westman's Case*, 118 Me. 133; *Larke v. Hancock Mutual Life Ins. Co.*, 90 Conn. 303; *Bryant v. Fissell*, 84 N. J. Law, 72; *Dietzen Co. v. Industrial Board*, 279 Ill. 11.

"If, then, the employee is in a place where he is prohibited from being by positive orders of his employer by reason of the danger, or has taken a certain course in going from one place to another which he is prohibited from taking by his employer for the same reason, notwithstanding it is within the period of his employment and his purpose in going to the other place is to perform some of his duties he is engaged to perform, he cannot be said, while in the forbidden place or while going by the forbidden route or means, to be acting in the course of his employment within the meaning of the compensation act, because he is not in a place where he reasonably may be in the performance of any of his duties. *Nelson R. R. Construction Co. v. Industrial Commission*, 286 Ill. 632; *Powell v. Bryndu Colliery Co.*, 5 B. W. C. C. 124; *Barnes v. Nunnery Colliery Co.*, 5 B. W. C. C. 195; *Borin's Case*, 227 Mass. 452; *United Disposal Co. v. Industrial Commission*, 291 Ill. 480; *McDaid v. Steel*, 4 B. W. C. C. 412. Of course, if he went to the forbidden place for a purpose not connected with his duties, *a fortiori* would he be outside the course of his employment. If, however, he is in the place where his duties are intended to be performed and where, of course, he

reasonably may be, and is engaged in the performance of them and only violates some rule relating to his conduct while in such performance, he is still acting in the course of his employment, even though he performs them recklessly and knowingly exposes himself to danger in violation of orders, and, unless the injury can be said to have been inflicted by 'wilful intention,' may recover compensation.

"The claimant in this case was not in a place where he reasonably might be when the accident occurred. He had taken a forbidden way. He was as much in a forbidden place where he could not reasonably be, when he was dangling at the end of a swinging rope between the floors of the building where he was working, as he would have been had he, in order to save time in going to some part of the employer's premises where his next duties were to be performed, passed through a transformer chamber full of high-tension wires, which he was forbidden to enter. He took the forbidden course for his own convenience and not that of the master."

In *Borin's Case*, 227 Mass. 452, the windows of one side of the room where claimant was employed had been nailed down so that the employees would not be climbing over vats of steaming dye to open them. Claimant took a hammer and chisel to pry open one of the windows and received an injury from a splinter from the chisel, and it was held that, as the employee was upon a forbidden part of the premises, the accident did not arise out of the employment; "the fastened window spoke as plainly to him that it was to remain closed as if a printed notice had been posted, or an oral order had been given, the intentional violation of which ordinarily would have precluded compensation."

In *Haas v. Kansas City Light & Power Co.*, 109 Kan. 197, an oiler of machinery went into a room of the building in which he had no duty to perform and received an electric shock. *In re Jenczewski*, 199 App. Div. (N. Y.) 156, compensation was denied for the reason that the

employee, at the time of his injury, was violating his in-
structions as to the place where he was to work, and was
therefore outside the sphere of his employment. In
*Reimers v. Proctor Publishing Co.,* 85 N. J. Law, 441,
compensation was denied because the employee whose
duty was to deliver papers had taken an automobile for
the purpose, contrary to express instructions.

The question as related to the place of employment,
whether or not the employee's injuries arose out of and in
the course of the employment, presents some difficulty in
the absence of special instructions. In such cases it
seems a wide discretion rests with the servant. The fol-
lowing cases are illustrative of the principle: *Christensen
v. Hauff Bros.,* 193 Ia. 1084; *Decatur R. & L. Co. v. In-
dustrial Board,* 276 Ill. 472; *White v. Industrial Com-
mission,* 167 Wis. 483; *Clem v. Chalmers Motor Co.,* 178
Mich. 340; *McCrary v. Wolff,* 109 Neb. 796. In none of
these cases was there any prohibition of the particular
act which caused the injury. In *Bryant v. Fissell,* 84
N. J. Law, 72, it was said: "An accident arises 'in the
course of the employment' if it occurs while the employee
is doing what a man so employed may reasonably do with-
in a time during which he is employed, and at a place
where he may reasonably be during that time." The
court quotes with approval from *Fitzgerald v. Clarke &
Son,* 2 K. B. (Eng.) 796: "The words 'out of' point to
the origin or cause of the accident; the words 'in the
course of' to the time, place, and circumstances under
which the accident takes place."

It may be conceded that, if the command of the master
had been without any restriction as to the place where
the desired operation was to be performed, and claimant
had acted as he did, his act might be considered as
within the scope and course of his employment, and the
only question would be whether he was guilty of wilful
negligence, for in such case the servant would be in-
vested with a reasonable discretion in the selection of
the precise place at which the particular service might

best be performed but where the place is designated, or a certain place forbidden, the servant has no discretion. Suppose a wall of a building is to be pulled down, and a servant, being ordered to attach a rope thereto, for that purpose goes upon the roof of the building and is injured by the collapse thereof, it could not be claimed that he was not within the sphere of his employment; but if the order was accompanied by a prohibition against going upon the roof, there seems no doubt but that his disobedience would take him without such sphere; he was at a place where he had no right to be in the performance of the work assigned to him. The prohibition in the supposed case, as in the one under consideration, went further than as respected the *manner* of doing the work, and touched the place where the servant should be. True, the claimant's weight upon the cage would tend to send it down, and to that extent may be considered a manner of doing the work; but this loses sight of the consideration as a part of the operation that the cage must be stopped at the floor level, and, as already suggested, this essential feature could not be accomplished in the manner attempted; and so, even in the absence of the prohibition, it might be a debatable question whether the servant was in a place where he could reasonably be expected to be, and therefore within the sphere of his employment; but it seems quite inadmissible to conclude that he was in a place reasonable to be expected in the face of a positive prohibition. The fact that he was actually attempting to perform a service for the master is not conclusive; in all of the following cases that fact was present: *Plumb v. Cobden Flour Mills Co.,* 7 B. R. C. (Eng.) 128, 51 Scottish L. R. 861; *Cook v. London & S. W. R. Co.,* 14 B. W. C. C. 100; *Jackson v. Canadian P. R. Co.,* 12 Sask. L. R. 433; *Kolaszynski v. Klie,* 91 N. J. Law, 37; *Bischoff v. American Car & Foundry Co.,* 190 Mich. 229; *Reimers v. Proctor Publishing Co., supra.*

Compensation is not denied merely as a penalty **for**

disobedience of the order, but because the servant has put himself in a place which the master has not provided, and, therefore, an injury occurring at and growing out of defects of that place cannot be said to arise out of or in the course of the employment.

The evidence is conflicting as to whether or not claimant was ordered not to get upon the hoist at the time he was told to bring it down to the floor level; but there is not only ample evidence to support the finding of the lower court that he was so ordered, and under the rule in *Urak v. Morris & Co.*, 107 Neb. 411, and *Swift & Co. v. Prince*, 106 Neb. 358, the same will not be disturbed, but the clear weight of the evidence independently considered supports the finding. The reason the master had for ordering Hughey not to get upon the hoist, whether it would drive the hoist below the level of the second floor or because it was not to be used as a carrier of passengers, is not important. It might have some bearing upon the question of negligence of the master, but in these cases that matter is not material.

We conclude that the injury to claimant did not arise out of and in the course of the employment, and it will not be necessary to discuss the question of wilful negligence.

The judgment is

AFFIRMED.