JULIA E. NORMAN, Administratrix, Appellant, v. CITY OF CHARITON, Appellee.

OCTOBER 16, 1928.

*G. C. Stuart,* for appellant.

*J. W. Kridelbaugh,* for appellee.

DE GRAFF, J.—This is an action predicated on the Workmen's Compensation Law of Iowa. The appellant-administratrix seeks to recover from the defendant, City of Chariton, for

 the death of T. A. Norman, who, it is alleged, met his death in the course of his employment with said city. The decision of the arbitrator was confirmed by the industrial commissioner, and, on appeal to the district court of Iowa in and for Lucas County, his decision was affirmed. The denial by the respective tribunals of the relief prayed is based on the finding that the decedent was not in the employ of the city of Chariton at the time of his death.

The filed opinion of the industrial commissioner presents, in brief form, the question in issue as follows:

"In view of these circumstances, there seems to be no escape from the conclusion that, at the time of his injury, the deceased was not in city service. He had agreed to donate this work he was performing to public enterprise, in which the city had absolved itself from all financial responsibility; that the council was prevailed upon by committees of several organizations to designate this place as a city park. It was understood that all improvements were to be made from public subscription, and without expense to the city. The record seems conclusive that Norman offered to operate the grader without charge, and as a contribution to the enterprise."

Before reviewing the controlling facts, it may be well to state the applicable legal principles. One of the essentials for recovery in a case of this character is that the claimed injury arose *out of* and *in the course of* the employment. It is one of the issues, and the burden is upon the claimant to establish the issue by a preponderance of the evidence. *Kraft v. West Hotel Co.*, 193 Iowa 1288; *Heinen v. Motor Inn Corp.*, 202 Iowa 67.

Further, the statute provides that there must be a contract of service, express or implied, between the alleged employer and the claimant. Section 1421, Paragraph 2, Code of 1924. See *Knudson v. Jackson*, 191 Iowa 947.

The record facts give rise to these questions: Was the decedent, Norman, an employee of the city at the time in question, and under contract with the city, either express or implied, to do the work in question? Did the city exercise any control in any manner over the work or the means of doing said

work? In brief, did Norman, as employee, represent the master (city of Chariton) in doing said work? These questions must be answered in the negative.

It appears that Norman had been employed by the city irregularly at 50 cents an hour, to operate its grader on the streets and alleys of the defendant city. He worked at such times as the weather permitted, and as he found it convenient. The accident in question, resulting in Norman's death, happened July 27, 1924. During the month of June, 1924, he worked part time for the city on four different days, but this work had no connection with the improvement in question.

Sometime prior to March 20, 1922, a committee of women of the city of Chariton called upon the city council, and asked permission to do certain work looking to the improvement of a block of ground owned by the city, and known as the "old electric light plant land." The purpose and intent of this committee were to secure permission to beautify this particular tract and make it a children's playground. On the same date, other committees, representing the Women's Club, the Commercial Club, and the Ladies' City Improvement Club, appeared before the council, with the same request. As a result of these conferences, the council passed a resolution setting aside this land owned by the city for park purposes, with the reservation: "Said park to be at all times under the jurisdiction of the park committee and the council." As a matter of fact, the jurisdiction in the matter was in the council, and the reservation in the resolution added nothing. These committees represented to the council that the work was to be paid for by subscriptions and donations in money or labor from interested citizens, and at no time was the city ever asked to donate any money. In fact, it did not.

It further appears that J. C. Flatt, chairman of the committee from the Commercial Club, took charge of the work. Subscriptions of both money and labor were taken, in order to prosecute this improvement. It was necessary to do some grading and terracing, in carrying out the committee's plans and specifications of the proposed improvement, and Chairman Flatt interviewed the committee on streets and alleys, and asked for the use of the city grader, stating that Mr. Norman was donating his services to the committee in charge of the work, and

would operate the grader free of charge. This statement was also made by Mr. Norman to a member of the city council and to the city clerk.

Chairman Flatt gave to Norman the necessary instructions, and explained to him what the committee proposed to do, and at that time Norman said to Flatt:

"If we can get the city grader, if they will let us have it, I am going down there and do this grading for you folks without charge."

The request was made by Mr. Flatt that the city donate the use of the tractor to operate the grader, and also the services of the man (a Mr. Noble) who operated the tractor. The city complied with this request, and there can be no question that both the members of the city council and the local committee in charge of the work understood that Norman was donating his service, and it is conclusively shown that Norman understood the arrangement.

It further appears that the city never paid any money in the promotion of the plan, and no member of the council or any city officer had anything whatsoever to do with the manner or means of construction in making the improvement. No one except the local committee gave directions concerning the same, and the city never attempted to exercise any authority over the individuals who conducted or carried on the improvement. The city did not direct who should work, when they should work, or how they should work. It is true that, at the time the committee secured permission from the council to beautify this plat of ground, plans and specifications showing how the committees intended to make the improvement were submitted to the council. Numerous citizens worked on this playground, and all the work done in behalf of civic improvement was done by public-spirited citizens, with the thought of public welfare.

It is apparent that the injury complained of did not arise in the course of his employment or out of it, so far as Norman's relation to the city of Chariton is concerned. The accident was not due to the employment by the city, nor did it arise from a risk reasonably incident to the employment. Norman was not acting within the sphere of his employment with the city. In fact, he had no contract with the city, either express or implied, to do this work. He did have an agreement

with the local committees, whereby he was to work for them gratuitously. He could have quit at any time, without legal liability to anyone. The city of Chariton was not his master. The city had no power of control, reserved or otherwise, over Norman in this particular. Nor did the city control or exercise the means by which the work should be done. See *In re Estate of Amond*, 203 Iowa 306.

Without further comment on the evidence, we hold that the conclusion reached by the industrial commissioner and affirmed in the district court on appeal is correct.

One further principle finds application here, and its application necessarily results in an affirmance. The finding of the industrial commissioner to the effect that the injury  did not arise out of and in the course of the employment, as alleged, is conclusive when the finding has support in the evidence, and there can be no question as to this proposition, under the instant record. See *Flint v. City of Eldon*, 191 Iowa 845; *Heinen v. Motor Inn Corp.*, supra.

The judgment entered by the trial court is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.