C. W. ENFIELD, Appellee, v. THE CERTAIN-TEED PRODUCTS COMPANY et al., Appellants.

No. 40559.

November 18, 1930.

Rehearing Denied February 12, 1931.

*Havner, Flick, Huebner & Powers,* for appellants.

*John E. Mulroney* and *Richard F. Mitchell,* for appellee.

Kindig, J.—There is presented on this appeal but one fundamental question, and that is whether the claimant-appellee's injury arose in the course of his employment with appellant  The Certain-teed Products Company. While thus employed, the claimant, who worked in the capacity of chief engineer, was injured, April 23, 1929, when moving an electric motor "from the first to the second floor" of a building belonging to the employer. The motor needed repairs, and in order to make them, the claimant and his helper

were transporting it from the first to the second floor, as above stated. In so doing, these men loaded the motor on a truck, and then moved the same onto an elevator "located in the central part of" the building. Thereupon, contrary to the employer's instructions, the claimant and his helper got upon the elevator, and started upward to the electric shop on the second floor. When arriving at the proper floor, claimant, in attempting to stop the elevator, injured his right hand, as it came in contact with the "cable and sheave wheel of the elevator." Hence he now makes claim against the employer for compensation, under Chapter 70, Title V, of the 1927 Code.

Before and at the time of the injury, the appellant American Mutual Liability Insurance Company carried the compensation insurance for the employer. It is claimed by the insurer and the employer that the accident in question did not arise in the course of the employment, because the claimant, at the time thereof, was not doing what a man so employed "might reasonably do;" nor was he at a place where he "might reasonably be," under his contract of employment. This conclusion by the employer and the insurer is based upon the thought that the claimant had been warned not to ride, and was prohibited from riding, upon the elevator. A suitable stairway was available for claimant's use, and he could start the elevator from the outside, and it would automatically stop itself at the proper floor. Furthermore, it is said by the employer and the insurer that no necessity existed for disobeying the foregoing rule of employment.

Upon the consideration of this controversy by the state industrial commissioner, he made at least seven findings of fact. These findings were not itemized by the commissioner. For  convenience, the employer has segregated and itemized those findings of the commissioner's. Chronologically stated, in the language of the employer, the commissioner's findings are as follows:

"First: In riding on the elevator at the time he sustained said injury, the claimant conspicuously violated a rule of his employer, prohibiting all persons from riding on said elevator.

"Second: Prior to sustaining said injury, the claimant had observed the warning placards prohibiting all persons to

ride on said elevator, and he knew it was against the rule of his employer for him to ride on said elevator.

"Third: Said rule prohibiting the claimant and all persons to ride on said elevator was well observed for years, and consistently enforced.

"Fourth: The claimant arbitrarily and unjustifiably violated the orders of his employer in riding in said elevator on the occasion when he was injured.

"Fifth: The time saved by riding the elevator instead of going up the stairs was so slight as not to justify the claimant's arbitrary conduct in violating said orders of his employer.

"Sixth: The motor could have been made secure on the truck, and it was not reasonable nor necessary for the claimant to violate said rule of his employer by accompanying the motor up the elevator to keep it in place.

"Seventh: The claimant's injury did not arise in the course of his employment."

Although the industrial commissioner made the foregoing findings of fact, the claimant contends that the district court had the right to review the same because there was no conflict in the evidence before the industrial commissioner. Without such conflict, the claimant urges, the courts are not bound by the industrial commissioner's conclusion.

Claimant's theory of the case is that he was doing the employer's work, and used the elevator in order to keep the motor from upsetting, there being no convenient way of fastening the same to the truck and the elevator platform. Haste was necessary, claimant maintains, in order to repair the motor, so that it could be installed in running order not later than 7 o'clock P.M. So, the claimant concludes, his action in the premises, even if wrongful, amounted only to contributory negligence, and therefore is no bar to his recovery of compensation.

I. Under the circumstances, did the district court properly say that the injury to claimant arose in the course of his employment? That is the question. If the injury did not arise in the course of the claimant's employment, compensation cannot be allowed. Section 1377 of the 1927 Code; *Jones v. Eppley Hotels Co.*, 208 Iowa 1281; *Sparks v. Consolidated Ind. Coal Co.*, 195 Iowa 334.

The burden of proof is upon the claimant to show that his

injury did arise in the course of his employment. *Jones v. Eppley Hotels Co.* (208 Iowa 1281), supra; *Griffith v. Cole Bros.*, 183 Iowa 415; *Norman v. City of Chariton*, 206 Iowa 790. Such are the essential prerequisites underlying claimant's right of recovery. Who is to determine those essentials? Manifestly, under the Iowa statutes, it is for the industrial commissioner to say whether the claimant has carried the burden thus cast upon him.

"The duty of determining where the preponderance of evidence lies, under the records in cases of this kind, is the task imposed by statute upon the state industrial commissioner. If there is no fraud, and that official acts with power, and not in excess thereof, and his findings support the order and decree, it cannot be interfered with on appeal to the district court unless 'there is not sufficient competent evidence in the record to warrant the making of the order or decision.' Section 1453, 1927 Code; *Flint v. City of Eldon* (191 Iowa 845), supra; *Hinrichs v. Davenport Locomotive Works*, 203 Iowa 1395." *Jones v. Eppley Hotels Co.* (208 Iowa 1281), supra.

While acting within the limits of his jurisdiction, the industrial commissioner cannot be interfered with by the district court or this tribunal. See authorities above cited. Interference by the courts with the state industrial commissioner under those circumstances amounts to the usurpation of power. *Flint v. City of Eldon*, 191 Iowa 845; *Jones v. Eppley Hotels Co.* (208 Iowa 1281), supra. On the other hand, if there are not sufficient facts in the record to support the findings of the industrial commissioner, the courts may review and set aside his action. Section 1453 of the 1927 Code; *Rish v. Iowa Portland Cement Co.*, 186 Iowa 443; *Reid v. Automatic Elec. Wash. Co.*, 189 Iowa 964; *Guthrie v. Iowa Gas & Elec. Co.*, 200 Iowa 150. Obviously, the absence of a conflict in the evidence is not enough to give the courts jurisdiction in the premises. Perhaps a given record might not contain conflicting evidence, yet the proof, although one-sided, may be amply sufficient to support the commissioner's finding. Consequently, claimant has not met the requirements to set aside the commissioner's finding by merely alleging that there is no conflict in the evidence. No doubt some of the items contained in the court's finding are without material conflict,

yet others of them are in dispute, under the evidence disclosed by the record. Those items concerning which there is no dispute in the evidence are, nevertheless, fully sustained by the record. As a result, the commissioner had before him substantial evidence upon which to base his findings, and consequently, under those circumstances, that official's conclusions are binding on the courts. *Norton v. Day Coal Co.*, 192 Iowa 160; *Sparks v. Consolidated Ind. Coal Co.* (195 Iowa 334), supra; *Heinen v. Motor Inn Corp.*, 202 Iowa 67; *Hinrichs v. Davenport Locomotive Works*, 203 Iowa 1395; *Herbig v. Walton Auto Co.*, 191 Iowa 394; *Flint v. City of Eldon* (191 Iowa 845), supra. Not only is the commissioner's finding aided by the direct evidence in the record, but the same may find support from reasonable inferences drawn therefrom. See cases last above cited.

Tested by the foregoing standards, a review of the record will now be made, in order to determine that the commissioner's findings have support in the evidence. In so doing, it will elucidate to consider the items of such finding as chronologically stated above. Conforming to the order previously given, then, those findings are:

First: "In riding on the elevator at the time he sustained said injury, the claimant conspicuously violated a rule of his employer prohibiting all persons from riding on said elevator." Regarding his knowledge of the employer's rule, the claimant himself testified:

"Both at the top and the bottom of this elevator there were signs reading: 'Warning: All persons forbidden to ride on elevator.' Exhibit D is one of these signs. * * * These signs are 16 by 21 inches, and the letters in the word 'warning' are 3 inches high; the word 'all' is 1½ inches high; and the other letters are about an inch high. These signs had been posted at the top and bottom of this elevator about a year before I was injured, and I had seen these signs many times before I was injured. At the time we took this generator up, I knew those signs were there, and I had seen them many times."

Claimant also said:

"It was my understanding that the sign 'prohibiting all men from riding on this elevator' meant everyone, and did not apply merely to the men under my supervision."

Again, claimant declared:

"Prior to this accident, I had attended safety meetings of the employees and bosses of the Certain-teed Products Company where safety programs were discussed."

Finally, claimant admitted:

"I knew I was not supposed to ride on this elevator, and I had read the signs prohibiting the men from doing it."

Moreover, it appears from the record that claimant had never ridden on the elevator but once before, and his employer did not know of that. None of the other employees had ever ridden on the elevator, so far as claimant knew. The purpose of this elevator was to hoist "raw materials." An executive of the employer corporation stated:

"Outside of the occasion when [claimant] was injured, I have not known of any employee or anybody else using that elevator to transport themselves up or down * * * except one man [other than appellant]. When they first installed the elevator, in 1920 or 1921, this one man got on the elevator. We then had signs up there, and everybody had been told not to ride. I came along and saw this man [the one who rode other than appellant] riding on the elevator, and I stopped him, and brought him back down, and told him to walk up,—take the stairway. Had he persisted in using the elevator, the chances are, he would have been discharged. So all of the 15 years I have been connected with this plant, the rule prohibiting the men or anybody else from riding on this elevator had been rigidly enforced."

This elevator was so constructed that materials could be placed upon it and then moved upward and downward, without the necessity of the operator's riding on the elevator. That performance was convenient and expedient. With all that record before him, the industrial commissioner had ample support for his finding that the claimant violated the employer's rule against riding on the elevator.

Second: The industrial commissioner found that, "prior to sustaining the injury, the claimant had observed the warning placards prohibiting all persons to ride on said elevator, and

he knew it was against the rule of his employer for him to ride on said elevator.'' A reference to the foregoing testimony is sufficient to convince the reader that there was support for the industrial commissioner's finding in this regard.

Third: ''Said rule prohibiting the claimant and all persons to ride on said elevator was well observed for years, and consistently enforced.'' To repeat here the foregoing evidence would unnecessarily lengthen this opinion. By referring to the evidence set forth under ruling Number One, it becomes apparent that the third ruling has sufficient support.

Fourth: ''The claimant arbitrarily and unjustifiably violated the orders of his employer in riding in said elevator on the occasion when he was injured.'' Without going on the elevator, its operation could be accomplished by the men while standing on the floor. Upon many previous occasions, electric motors had been carried up and down in the elevator, without a man accompanying them. As an excuse for violating the employer's rules against riding on the elevator, claimant's helper testified:

''The chief reason why we [the helper and the claimant] didn't go up the stairs, instead of accompanying this generator up the elevator, is that we wanted to get through, so there would be no delay in starting the mill.''

At the time this decision was made by the claimant and his helper, it was about 3 o'clock in the afternoon, and, under the record, the mill was not to be started until 7 o'clock that night. According to the evidence, the work to be done upon the generator was not such as to require much time. From the one floor to the other was a stairway, constructed for the use of the employer's men, including the claimant. Apparently claimant could have placed the generator on the elevator platform, stepped back onto the mill floor, started the elevator from the outside, walked up the stairs, and arrived at the elevator door about the time, or at least soon after, the elevator automatically went from one floor to the other.

Again, it is said by the claimant that he rode upon the elevator because he feared that the motor might ''tip'' if he were not there to hold it in place. Contrary to this contention, it appears that the generator weighed from 400 to 600 pounds.

It was a compact unit, 18 inches square; hence would not have a tendency to tip. Also, it appears that around the edges of the elevator platform, and fastened thereto, was ''a piece of sheet iron, standing up 6 or 8 inches.'' Against that sheet iron the wheels of the truck were placed, and thereby prevented from running off the elevator. Said truck was the kind used in flour mills, and it had two wheels on the front and two iron legs in the rear. Then, when the truck was ''set down,'' the weight rested on the two legs and the two wheels. No necessity appears for the claimant and his helper to accompany the truck on the elevator. Upon many previous occasions, generators were taken up the elevator on the truck without such accompaniment. Too, the claimant and his helper could have fastened the truck handles to the elevator by chain or wire, and inconvenience was given as the reason for not doing so.

Therefore, the industrial commissioner could properly draw the inference from the foregoing record that the claimant's action was arbitrary and unjustifiable.

Fifth: ''The time saved by riding the elevator instead of going up the stairs was so slight as not to justify the claimant's arbitrary conduct in violating said orders of his employer.'' Sufficient support for this finding may be found in the recitation of facts under Finding Four, above set forth.

Sixth: ''The motor could have been made secure on the truck, and it was not reasonable nor necessary for the claimant to violate said rule of his employer by accompanying the motor up the elevator to keep it in place.'' To repeat at this juncture a part of the record previously given, it appears that machinery was constantly taken upon the elevator without anyone accompanying it. Included among the machinery thus transported were electric motors, which moved both up and down on the elevator. So, too, electric generators were carried up and down the elevator, and they did not tip off the elevator so as to indicate the necessity of an accompanying employee.

Likewise, additional support for this finding may be found in the evidence set forth in Finding Four and the inferences legally to be drawn therefrom. Clearly, those facts and circumstances, together with the legal inferences to be drawn therefrom, are sufficient to support the commissioner's six findings above catalogued.

There remains, however, the question whether or not the foregoing findings and the record involved are sufficient to support the court's finding Number Seven, to wit: "The claimant's injury did not arise in the course of his employment." An answer to that question involves the recognition of the primary elements in the phrase "in the course of employment." Time and place of employment are fundamentally embraced in the phrase "in the course of the employment."

" '* * * an accident arises "in the course of the employment" if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' " *Christensen v. Hauff Bros.,* 193 Iowa 1084, 1089.

"The test seems to be whether deceased * * * was doing what 'a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' " *Griffith v. Cole Bros.,* 183 Iowa 415, on pages 425 and 426.

In *Pace v. Appanoose County,* 184 Iowa 498, on page 505, we approved the holding in the *Griffith* case, supra, by the use of the following language:

"The test in determining whether the injury has arisen in the course of employment is there [in the *Griffith* case] said to be 'whether deceased * * * was doing what "a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." ' "

Beyond peradventure of a doubt, the claimant in the case at bar was not in a place where, under his contract of employment, he could "reasonably be." Claimant was forbidden by his employer to be upon the moving elevator. The prohibition contained no exceptions, and was at all times rigidly enforced. Such prohibition became a part of the contract of employment existing between the claimant and the employer. Within the purview of that contract, claimant was not to be upon the elevator when the same was in motion. Because he violated the aforesaid prohibition, claimant received his injuries. This violation amounted to unjustifiable and arbitrary conduct on his part.

Thus, when riding upon the elevator, the claimant was doing that which, under the contract, he "may not reasonably do, and" he was not at a place "where one so employed may reasonably be." Wherefore, the injury did not arise "in the course of the claimant's employment." *Christensen v. Hauff Bros.* (193 Iowa 1084), supra; *Hibberd v. Hughey,* 110 Neb. 744 (194 N. W. 859); *Fournier's Case,* 120 Me. 236 (113 Atl. 270); *Schelf v. Kishpaugh,* 37 N. J. L. J. 173 (note in 9 N. C. C. A. 653); *Reimers v. Proctor Pub. Co.,* 85 N. J. Law 441 (89 Atl. 931); *Northern Illinois L. & T. Co. v. Industrial Board,* 279 Ill. 565 (117 N. E. 95); *Lumaghi Coal Co. v. Industrial Commission,* 318 Ill. 151 (149 N. E. 11); *Gacesa v. Consumers Power Co.,* 220 Mich. 338 (190 N. W. 279); *Smith v. Corson,* 87 N. J. Law 118 (93 Atl. 112); *Brusster v. Industrial Acc. Comm.,* 35 Cal. App. 81 (169 Pac. 258); *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. St. 480 (139 Atl. 192). Quoted excerpts from some of the foregoing opinions will elucidate the discussion. While considering this subject, our court, in *Christensen v. Hauff Bros.* (193 Iowa 1084), supra, on page 1090, stated:

"No question of willful misconduct [or negligence] arises in the case. The sole question in the case is whether the accident and consequent injury arose out of and in the course of the workman's employment."

Continuing at the bottom of page 1091, we declared:

"In other words, if, upon consideration of all the circumstances, there existed causal connection between the conditions under which Christensen's work was required to be performed and the resulting injury, it could then be said that he was, at the instant of the injury, within the scope of his employment. If the conclusion may be logically reached that the workman's injury followed as a natural incident of his work, and was reasonably contemplated in his employment, then it may be said to have arisen out of the employment. But we think such conclusion not reasonably possible. We think it could not have been contemplated in this relationship of employer and workman, disclosed by the facts and circumstances in this case, that Christensen would do the hazardous and rash act which he did. *There was nothing in his engagement requiring such an act.*" (The italics are ours).

Subsequent to the foregoing, we further stated, on page 1092 of the opinion:

"This employee could not recover for his injuries from the shipper, because there was no occasion arising out of his employment for his being on top of the box car, and his injury would have no causal connection with his employment."

It was said by the Nebraska Supreme Court in *Hibberd v. Hughey* (110 Neb. 744 [194 N. W. 859]), supra, on page 862:

"It may be conceded that, if the command of the master had been without any restriction as to the place where the desired operation was to be performed, and claimant had acted as he did, his act might be considered as within the scope and course of his employment, and the only question would be whether he was guilty of willful negligence; for in such case the servant would be invested with a reasonable discretion in the selection of the precise place at which the particular service might best be performed; but where the place is designated, *or a certain place forbidden, the servant has no discretion* [the italics are ours]. * * * Compensation is not denied merely as a penalty for disobedience of the order, but because the servant has put himself in a place which the master has not provided, and, therefore, an injury occurring at and growing out of defects of that place cannot be said to arise out of or in the course of the employment."

Upon this subject, the Supreme Court of Maine, in *Fournier's Case* (120 Me. 236 [113 Atl. 270]), supra, concluded:

"Here lies the real test. The phrase 'in the course of the employment' is too frequently lost sight of, and is seldom discussed. It is often clear that the accident did not 'arise out of' because it did not occur 'in the course of,' but only the former reason is assigned for the decision. One is just as essential a condition of the right to compensation as the other. If an accident does not occur 'in the course of,' it cannot 'arise out of,' the employment. In this particular class of claims the determining factor is, we think, whether the accident occurred in the course of the employment. To discuss spheres of employment and rules of conduct only obscures the real issue. The words 'in the course of the employment' relate to the time, place,

and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. * * * If, then, the employee is in a place where he is prohibited from being by positive orders of his employer by reason of the danger, or has taken a certain course in going from one place to another which he is prohibited from taking by his employer for the same reason, notwithstanding it is within the period of his employment, and his purpose in going to the other place is to perform some of his duties he is engaged to perform, he cannot be said, while *in the forbidden place* [the italics are ours], or while going by the forbidden route or means, to be acting in the course of his employment, within the meaning of the Compensation Act, because he is not in a place where he reasonably may be in the performance of any of his duties.''

Further quotation is not necessary.

Plainly, under the record, the industrial commissioner's findings had ample support in the record, and the district court did not have a right to set them aside.

II. But the claimant argues that his action in the premises amounted to no more than negligence, and that compensation may be allowed under the law, regardless thereof. The only  bars to recovery under the Compensation Act, claimant urges, are: First, the willful intention of the employee to injure himself, or the willful intention on his part to injure another; and second, the employee's intoxication, which is the proximate cause of his injury.

There is no contention at this place that the claimant was intoxicated, or that he intended to injure himself or another when riding on the elevator. Hence, the claimant declares that his action, at most, amounted to negligence, and that, under the Compensation Act, is not a bar to his recovery. Similar arguments were made in many of the cases above cited. A sufficient answer to claimant's proposition is that he, at the time of his injury, was acting outside of his employment, because the moving elevator was not a place where he might reasonably be. Also,

when the claimant was riding on the elevator, he was not doing what a man "so employed" might reasonably do. Those distinguishing features raise the claimant out of the realm of ordinary negligence, and place him in a position where his alleged injury did not arise in the course of his employment. Forsooth, claimant took himself out of the course "of his employment" by stepping into a place forbidden by the master and not contemplated by the employment contract. Consideration was given to this subject by this court in *Christensen v. Hauff Bros.* (193 Iowa 1084), supra, on page 1090:

"That the workman was negligent, even grossly negligent, and acted in flagrant disregard of his bodily safety, is readily apparent. But freedom from negligence is not required to be shown in behalf of the workman, and negligence of a workman is not a defense under the act. To defeat recovery, it must 'appear that such negligence was willful, and with intent to cause injury; or the result of intoxication on the part of the injured party.' No question of willful misconduct arises in the case. The sole question in the case is whether the accident and consequent injury arose out of and in the course of the workman's employment."

Then the court continued to hold that Christensen was not entitled to compensation because his injury occurred while he was doing what a man so employed may not reasonably do, at a place where he might reasonably be. Claiming that they contain a contrary holding, the claimant cites *Eugene Dietzen Co. v. Industrial Board of Illinois,* 279 Ill. 11 (116 N. E. 684); *In re Claim of Macechko v. Bowen Mfg. Co.,* 179 App. Div. 573 (166 N. Y. Supp. 822); *Decatur R. & L. Co. v. Industrial Board,* 276 Ill. 472 (114 N. E. 915); *State ex rel. Storm v. Hought,* 56 N. D. 663 (219 N. W. 213). Those authorities, with the exception of the *Hought* case, very largely, if not entirely, sustain the rule above announced. During some of the discussion in the cited cases, there seems to be confusion between the terms "growing out of" and "arising in the course of." In the *Hought* case, the North Dakota Supreme Court reached a conclusion somewhat contrary to that announced by us in the case at bar. Much of the discussion, however, is consistent with what we have said, and the conclusion in that case was brought about

by following some of the earlier authorities, which confused the terms ''growing out of'' and ''arising in the course of.''

While intoxication and willful intent to injure are statutory bars for the recovery of compensation, likewise it is a statutory essential that the injury must arise in the course of the employment, in order to justify compensation. As shown by the many authorities of this and other courts, an employee is not within the course of his employment if he is ''not doing what a man so employed might reasonably do, or not at a place where he might reasonably be.'' Not only was the claimant in the case before us prohibited from being on the elevator while the same was in motion, but, in fact, his contract contemplated that he should not work there under that condition.

Clearly, then, a distinction appears between the facts and circumstances here presented and an ordinary case of negligence.

III. Nevertheless, the claimant contends that, at the time of his injury, he was serving his master's interests and doing what he was employed to do, but in a prohibitive manner. Because thereof, the claimant maintains that his act and conduct, at most, amounted to negligence, and could not bar a recovery.

What has been said in the division above disposes of this contention. Unquestionably, claimant, when riding upon the elevator in violation of the employer's instructions, was not serving the latter under the contract of employment. The claimant's action in riding on the moving elevator was unnecessary, unreasonable, and unjustified, as shown by the record under Division I. In fact, his conduct in that regard was arbitrary, and outside of the terms contemplated by the contract of employment.

Resultantly, the injury did not arise in the course of his employment, as before indicated. We do not decide or indicate what our holding might be, were the employee's violations limited to some rule or regulation which did not amount to a prohibition and become a part of the employment contract.

Because of the reasons above assigned, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.