ROSE VOLCHECK, APPELLEE, v. WESTERN UNION TELEGRAPH COMPANY, APPELLANT.

FILED MARCH 8, 1935. No. 29433.

*Francis R. Stark, Brogan, Ellick & Shoemaker* and *J. J. Fitzgerald, Jr.,* for appellant.

*Reed, Ramacciotti & Robinson* and *Albert F. Wahl,* contra.

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

Rose, J.

This is a proceeding under the workmen's compensation law. Comp. St. 1929, secs. 48-101 to 48-161. Arthur Volcheck, 19 years of age, was employee. His mother, Rose Volcheck, is plaintiff. The Western Union Telegraph Company was employer and is defendant. The employee had been in the service of defendant as a messenger boy. Plaintiff claims that she is a dependent within the meaning of the workmen's compensation law; that while her son was engaged in the duties of his employment, returning on his bicycle to his employer's office February 5, 1933, at 12:45 a. m., after delivering a telegram, he was struck by an automobile and fatally injured; that the accident arose out of and in the course of his employment; that plaintiff is entitled to compensation which has not been paid. The defense interposed was that the messenger disobeyed an order of his employer to go to and return from the place of delivery by street car, for which he received car fare, and that consequently his fatal injuries, while attempting to return on his bicycle, did not "arise out of and in the course of his employment." The compensation commissioner rejected plaintiff's claim, and she appealed to the district court where she was awarded $6 a week for 350 weeks, $150 for the purpose of burial and $223.25 for medical expenses. Defendant appealed to the supreme court.

On appeal it is argued by defendant that the allowance of compensation was erroneous because plaintiff did not prove the accidental injury arose out of and in the course of the employment. The position taken by the employer is "that as soon as messenger Volcheck violated the order to take the street car and started out on his bicycle, he thereby removed himself from the scope of his employment because he was not at a place where he reasonably should have been." In support of this proposition defendant cites *Hibberd v. Hughey,* 110 Neb. 744, wherein the following doctrine was announced:

"Disobedience of a positive order as to the place where work is to be performed, resulting in injury to the servant

arising out of the place selected by him, constitutes a departure from his employment, and such injury cannot be said to 'arise out of and in the course of' his employment within the meaning of the employers' liability law."

Whether a departure from instructions defeats compensation depends largely upon the facts and circumstances of each particular case. *McCrary v. Wolff*, 109 Neb. 796. In the present instance Arthur Volcheck had been a regularly employed messenger in the service of defendant. Before midnight February 4, 1933, he and other messenger boys were in defendant's main office, Fourteenth and Farnam streets, Omaha, awaiting calls for the delivery of messages. At the same time, C. Nelsen, night manager of defendant's delivery department, was on duty there. He called "19," which meant Volcheck, who promptly reported for service. What then occurred and the instructions given were told by Nelsen on the witness-stand as follows:

"I called the number and I gave him a message to the German Home at 4206 South Thirteenth street, and when I gave it to him I gave him two car checks and I told him to go to Fourteenth and Howard and get a car going east on Howard street, that would say 'Albright' on it, and it would go down to Thirteenth and Howard and then turn south on Thirteenth and it would take him right in front of the door."

Nelsen testified further that he related all of the transaction at the time and that he did not remember of then saying anything more. However, he was permitted to explain the giving of his specific directions as to the line of travel by observing that changes had been made in the routing of street cars. He also gave reasons for his order to take a street car by saying that it was a long distance to the place of delivery, that the weather was cold, that the streets were slippery and that riding was dangerous. His direct testimony that he told the boy to take a street car was weakened to some extent on cross-examination by the statement that what he probably said was, "You can catch it."

With the weather at zero the boy mounted his wheel, went to the German Home, delivered the message, started back to the office where duty called, was struck from the rear by an automobile on Thirteenth street, was fatally injured and died February 6, 1933.

There was no positive order forbidding the use of the bicycle. · There is nothing in the record to show that the messenger boy was guilty of wilful negligence barring compensation within the meaning of the workmen's compensation law. He was not outside the zone or sphere of his employment. He was injured in the street on which the street car ran—the one he was directed to take. A photograph of the pavement where the accident occurred was admitted in evidence and does not indicate a dangerous place for the use of a bicycle. There is no proof that either cold or distance contributed to the accident. The message was in fact delivered and the messenger was on his way back to his employer's office. A manual of instructions to messenger boys is in the bill of exceptions. Messengers were required to read the manual. The instructions therein dealt with manners, clothing and equipment and emphasized dependableness as the sum of big factors in qualifications and service. The rules recognize the use of bicycles in making deliveries. Messenger Volcheck did not indulge himself in the comfort and safety afforded by street cars, but went on his wheel about midnight regardless of distance, of cold and of slippery pavements. In spite of the elements he made the trip to the German Home in safety. On his way back he was injured only when run down by an automobile in the rear. From all the circumstances it is a reasonable and proper inference that the boy did not make such a departure from instructions as to remove himself from the scope of his employment or make his injury noncompensable. The better view of the evidence is that the case falls within the following principle:

"Mere disobedience by the servant of the master's order regarding the manner in which work is to be performed

will not operate to remove the servant from the sphere of his duties." *Hibberd v. Hughey,* 110 Neb. 744.

In this view of the law and of the facts outlined, the judgment of the district court should be and is

AFFIRMED.