533 P.2d 573

**CITY PRODUCTS CORPORATION et al., Petitioners,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Robert D. Tendick, Respondent Employee,**

**No. I CA–IC 1039.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 27, 1975.

Rehearing Denied April 30, 1975.

Review Denied June 3, 1975.

Jones, Teilborg, Sanders, Haga & Parks, P. C. by William R. Jones, Jr., and Robert J. Bruno, Phoenix, for petitioners.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lángerman, Begam, Lewis, Leonard & Marks by Noel Fidel, Phoenix, for respondent employee.

## OPINION

STEVENS, Judge.

The Court must decide whether the finding of The Industrial Commission that the injury sustained was in the course of and arising out of the employment is supported by reasonable evidence and the Workmen's Compensation law.

Robert D. Tendick (employee) was employed by petitioner Crystal Ice & Cold Storage and while performing his duties, was injured on 12 October 1972. He filed a claim for benefits before The Industrial Commission of Arizona. The Fidelity & Casualty Company of New York, the petitioner-carrier, on 26 October 1972, issued its notice of claim status denying the claim. On 4 December 1972 the employee filed a timely request for a hearing. A formal hearing was held on 26 April 1973. On 31 May 1973 the hearing officer issued his decision upon hearing and findings and award for compensable claim. The hearing officer found that "applicant sustained an injury by accident arising out of and in the course of his employment with the above-named employer on October 12, 1972 within the meaning and definition of the Workmen's Compensation Act." The hearing officer ruled that the applicant is entitled to compensation benefits as provided by law. Crystal Ice & Cold Storage (petitioner) filed a request for review on 11 June 1973. On 30 July 1973, The Industrial Commission of Arizona issued its decision upon review affirming decision upon hearing and findings and award for compensable claim and found that the hearing officer's findings were fully supported by the evidence. Petitioners brought the case to this Court upon a writ of certiorari.

As previously stated, the employee was injured on 12 October 1972. At the hearing, the employee testified that on the date of the injury he was working with three other co-employees placing bags of crushed ice onto a conveyor belt. He testified that he climbed onto the conveyor belt in an attempt to cross it to do some work on the other side but that he was grabbed by two co-employees and held on the conveyor belt. He injured his back when his feet struck the door at the point the belt left the building to a loading dock. The employee was thrown off the belt and onto the floor. At the hearing, one of the co-employees alleged to have held him testified that he did not hold the employee on the conveyor belt but that the employee got on the belt and rode it into the door. The hearing officer found that if the employee's "version of the accident is correct he would be considered a non-participating victim of horseplay which would not preclude the compensability of any injury he received" or "if the co-employee's version of the accident is correct, there was no

horseplay involved at all and the only issue remaining is whether the applicant's claim should be denied for the reason that he has violated a safety rule of his employer prohibiting riding on the conveyor belt." The hearing officer applied the rule of Goodyear Aircraft Corporation v. Gilbert, 65 Ariz. 379, 181 P.2d 624 (1947), and found that "the employer's rule prohibiting riding on the belt related to the manner of accomplishing applicant's work and was not one limiting the scope, ambit or sphere of the work applicant was authorized to do." The petitioners urge that under any construction of the facts as testified to at the hearing, an award should have been in favor of petitioners and against the employee.

■ An employee is entitled to workmen's compensation if injured by an accident "arising out of and in the course of [his] employment." Ariz.Const. art. 18, § 8; A.R.S. § 23–1021. "The expressions 'arising out of' and 'in the course of' the employment are not synonymous; but the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' to refer to the time, place, and circumstances under which it occurred." Goodyear Aircraft Corporation v. Gilbert, supra, 65 Ariz. at 383, 181 P.2d at 626; accord, Rodriguez v. The Industrial Commission of Arizona, 20 Ariz.App. 148, 510 P.2d 1053 (1973). Both parties rely on this case, urging that the test promulgated in Goodyear, supra, if properly applied, supports their respective positions.

In Goodyear, supra, the Supreme Court of Arizona considered the effect that a violation of company rules may have on the compensability of an injury. In the present case, it is undisputed that the employee knew that there was a company safety rule prohibiting employees from riding the conveyor belt. In fact, this employee was previously reprimanded for violating this rule. The Supreme Court stated the rule as follows:

"If the rule relates only to the manner of accomplishing the work that the employee is directed to perform, a violation of such rule 'when he (the employee) adopts a forbidden method to accomplish an authorized result' usually does not destroy his right to compensation. But where, however, the rule is one limiting the scope, ambit, or sphere of work which the employee is authorized to do, such a violation forecloses the compensability of an injury so sustained." 65 Ariz. at 383–384, 181 P.2d at 627.

■ Applying this test, the petitioners conclude that the employee "while riding upon the conveyor belt, had entered a place where he was specifically instructed not to be," therefore foreclosing compensability. The employee, using the same test, urges that the employer's prohibition of belt-riding relates to the manner of accomplishing his work and did not limit the scope, ambit, or sphere of the work he was authorized to do. The hearing officer adopted this latter view and in this finding we concur. The employee testified that he climbed on the conveyor belt to work on the other side. The petitioners do not urge that the employee was not authorized to work on the other side but that because of the rule, he should have walked around the belt on the aisle provided for that purpose. The rule clearly relates to the manner he is to use to accomplish that authorized result.

The petitioners urge as error the fact that the hearing officer did not make any findings of fact as to which version of the story he accepted. The hearing officer found that if the employee's version of the injury was true, then he would be considered a non-participating victim of horseplay which would not preclude compensability. Further, if the co-employee's version was correct and no horseplay was involved, the employee's injury is still compensable because the rule was directed at the manner that the employee was to accomplish his work. Regardless of which version of the injury is correct, the fact still remains that the employee violated a

safety rule by climbing on the conveyor belt. The analysis must be directed to: Did the rule prohibit a method to accomplish an authorized result or did it limit the scope of work which the employee is authorized to do? This is the analysis we adopted.

The petitioners also argue that the employee should not be compensated because he knew that he was breaking a safety rule and that he was personally reprimanded for violating this rule before. We believe that the workmen's compensation law is not the vehicle for urging considerations of fault. It is the employer's primary responsibility to enforce safety regulations and it has the appropriate means necessary to assure compliance. We do not mean to say that we condone the breaking of safety regulations by employees but when the regulation relates to the manner of accomplishing a certain job, the workmen's compensation law is not the means to enforce it.

The award of The Industrial Commission is affirmed.

NELSON, P. J., concurs.

WREN, Judge (dissenting).

I do not agree. The *Goodyear* rule, in my opinion, does not *per se* reach the ultimate issue involved here. The difficulty lies not with an abstract statement of the rule, but with its application to the facts. The majority opinion ignores a long line of cases showing a fairly consistent and clear line of demarcation between doing a permitted act of employment carelessly and being in a place where the employee has been expressly forbidden by his employer to be. The situation here cannot be likened to an injury resulting from failure to observe safety rules in wearing gloves, steel-capped shoes or goggles while handling the ice. The employee had put himself in an area where his employment was not to take place at all. He was not engaged in the performance of any act for his employer while riding the conveyor belt. His purpose in crossing to the other

side of the belt was to continue working with the ice, but he could only handle the ice after getting there, and he had taken the forbidden route for his own convenience and not that of his employer.

While riding the conveyor belt he was at a "prohibited place", and was not merely doing a prescribed task in a proscribed manner. A distinction between place and act of employment was clearly drawn in Thomas v. Industrial Commission, 54 Ariz. 420, 96 P.2d 407 (1939), when an employee was injured while making a business related trip in violation of his supervisor's orders. The Court there approved the view that where an employee is in a place he is excluded from by direct and positive instructions of his employer, he acts outside the sphere of his employment.

Furthermore, *Thomas* quoted extensively from In re Fournier's Case, 120 Me. 236, 113 A. 270 (1921), which reviewed the cases distinguishing the "forbidden place" or the "forbidden route" from the performance of employment duties. In *Fournier's Case* an employee was engaged in sorting bales of cotton and hoisting them from the basement upstairs through a trapdoor by means of a rope running over a pulley and attached to an engine. He was injured while going upstairs by means of the rope. It was held that, even though he was going to the upper floor to attend to matters for the employer, he was not injured in an accident arising out of and in the course of the employment within the Workmen's Compensation Act, where there was a stairway provided for employees going upstairs, and there was a rule which the employee had knowledge of, that no man should go up the rope.

The Court reasoned:

"He was as much in a forbidden place where he could not reasonably be, when he was dangling at the end of a swinging rope between the floors of the building where he was working, as he would have been had he, in order to save time in going to some part of his employer's premises where his next duties were to

be performed, passed through a tranformer chamber full of high-tension wires, which he was forbidden to enter. He took the forbidden course for his own convenience, and not that of the [employer].

.      .      .      .      .      .

"If, then, the employees is in a place where he is prohibited from being by positive orders of his employer by reason of the danger, or has taken a certain course in going from one place to another which he is prohibited from taking by his employer for the same reason, notwithstanding it is within the period of his employment, and his purpose in going to the other place is to perform some of his duties he is engaged to perform, he cannot be said, while in the forbidden place or while going by the forbidden route or means, to be acting in the course of his employment within the meaning of the Compensation Act, because he is not in a place where he reasonably may be in the performance of any of his duties." (Citations omitted). 120 Me. at 240–241, 113 A. at 272.

In Hibberd v. Hughey, 110 Neb. 744, 194 N.W. 859 (1923), the employee was directed not to get onto an elevator at the time he was told to lower it to floor level. The Court concluded that where the employee violates instructions as to the place in which he is to perform his labor he thereby removes himself from the sphere of his employment, and set aside compensation that had been allowed by the Commission.

More recently in Buehner v. Hauptly, 161 N.W.2d 170 (Iowa 1968), a carpenter, employed in the construction of a grain elevator, was repeatedly instructed not to ride hoists used to haul material and tools from the ground to the work level. He was fatally injured while using the hoist to descend from the top of the elevator. The Court held that he was at a prohibited place, that is, on the hoist, and that therefore the fatal injury did not arise out of and in the course of his employment.

The argument in *Buehner* that decedent was on the platform where he had a right to be, and was merely getting to the ground in a way which was against regulations, was rejected in favor of the argument that the "place" which was important was not the platform but the hoist. That is where the decedent was and that is where he was forbidden to be. The Court further rejected the assertion that once decedent had rightfully established himself on the elevator platform *any* means of descent could be nothing more than negligence in the performance of a service required by, or incidental to, his employment.

I appreciate that in our consideration of this question the Court is bound to construe the evidence as favorably as it reasonably may be construed to sustain the award. Thomas, *supra*. However, to me, the evidence is clear that the employee acted outside the sphere of his employment. The decision of this Court makes "[t]he employee, rather than the employer, the manager of the business, with no power in the latter to protect himself from liability or loss." Id., 54 Ariz. at 430, 96 P.2d at 411.

I respectfully dissent.