646 P.2d 886

Jack SCHROEDER, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

H & H Seed Company, Inc., Respondent Employer,

Twin City Fire Insurance Company, Respondent Carrier.

No. 1 CA–IC 2641.

Court of Appeals of Arizona, Division 1, Department C.

April 6, 1982.

Rehearing Denied May 4, 1982.

Review Denied June 8, 1982.

**456**

Harlan Heilman, Yuma, for petitioner.

Calvin Harris, Chief Counsel, The Industrial Com'n of Ariz., Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. A. by Larry L. Smith, Phoenix, for respondents employer and carrier.

OPINION

CONTRERAS, Judge.

In this special action review of an Industrial Commission award, the sole issue is whether petitioner employee's injury arose in the course of his employment. The administrative law judge concluded that it did not and issued an award for a noncompensable claim. We set aside the award.

BACKGROUND

Petitioner employee (hereafter claimant), a laborer for respondent employer, was injured when a forklift on which he was riding double tipped over and pinned him to the ground. His claim for workmen's compensation was denied by the respondent carrier. He timely requested a hearing before the Commission to protest this denial.

At the hearing, claimant testified that he had worked for the respondent employer for approximately two weeks before the accident. Although there was a conflict in the testimony regarding the employer's policy relating to riding double on forklifts, the administrative law judge found that the employer had an oral policy prohibiting such practice, that claimant knew or should have known of this policy, and that it was uniformly enforced.

The evidence showed that claimant and a co-employee were sweeping up seed, bagging it, and stacking pallets of these bags of seed. The co-employee was using a forklift to move and stack these pallets. After completing this job, claimant proceeded, in accordance with his foreman's instructions, to another building on the employer's premises located approximately 100 yards away. Instead of walking, he rode double on the forklift driven by the co-employee, who was going in the same direction. He conceded that it was unnecessary to ride on the forklift. He could not explain why the forklift tipped over, and respondents have not contended that riding double *caused* the accident.

The uncontroverted testimony of the co-employee substantially corroborated claim-

ant's account of the circumstances preceding this accident. In addition, he testified that he took the forklift to the other job location because it was needed there. He testified that the accident occurred when the brakes locked as he was rounding a blind corner.

Neither the supervisor nor the foreman observed the accident when it occurred. At the first hearing, the foreman admitted that claimant was performing his assigned task prior to the accident, that he was enroute to his next job when the accident occurred, and that the forklift was needed to perform the next task. In an interview with an investigator, however, he stated, without factual detail, that the co-employee and claimant were "racing" and "goofing off" on the forklift. Prior to hearing, an unsigned transcript of this interview was filed with the Industrial Commission and is of record. The foreman was not examined with respect to this transcript. It is clear from the evidence that the foreman's observations were limited to what he saw after the accident took place.

The administrative law judge's award was for a noncompensable claim. To support this award, he made the following findings. First, he found that when the accident occurred, claimant was "engaged in an activity which could be described as 'horseplay' with ... a co-employee, which consisted of [the co-employee] operating the forklift truck and applicant riding thereon as a passenger...." Second, he found that the employer had a policy prohibiting riding double on forklifts and that claimant and the co-employee knew of this policy. Third, he concluded that "the evidence established that applicant's activities were of such a magnitude to carry him beyond the course of his employment and remove him from the penumbra of workmen's compensation coverage...." (citations omitted).

After exhausting his remedies before the Commission, claimant sought further review in this court.

## HORSEPLAY

On appeal, claimant contends that the administrative law judge mistakenly applied to this case the rule concerning horseplay, rather than the rule concerning employee misconduct. He further asserts that if properly analyzed, his claim is compensable. Respondents, apparently recognizing that there is no evidence to support the administrative law judge's reliance on the rule concerning horseplay, make no attempt to defend the award on that basis. We agree that horseplay is not involved.

Claimant's conduct in this case does not involve the substantial, purely personal deviation from the course of his employment with "no conceivable benefit" to the employer, such as was involved in *Anderson Clayton & Co. v. Industrial Commission*, 125 Ariz. 39, 607 P.2d 22 (App.1979).[1] Here, claimant was on the job, not whiling away a slack period. He was following his foreman's instructions on an authorized route when he should have been there. He was using a vehicle customarily used in the employer's business, not one brought to the workplace by the employee for his own recreation. His conduct benefitted his employer by getting him from one work area to another, despite the unauthorized method of accomplishing the assigned task. This activity did not constitute horseplay. Accordingly, any rule concerning horseplay was not applicable.

## EMPLOYEE MISCONDUCT

As indicated above, respondents have not attempted to support the award on the basis of the administrative law judge's "horseplay" findings. Rather, they contend that

1. In *Anderson Clayton,* this court held that claimant's horseplay, which consisted of leaping 70 feet from a conveyor belt into a pile of cotton seed, carried him outside the course of his employment because he jumped for purely personal reasons. This analysis clearly stated that activities resulting in indirect benefit to the employer would not constitute horseplay, and even contemplated that horseplay which had become a "regular practice" and/or which involved a limited deviation would be compensable. *Accord,* 1A A. Larson, Workmen's Compensation Law, §§ 23.61, 23.63 (1978).

he correctly applied general "course of employment" principles and, in particular, the rule concerning employee misconduct.

■ In Arizona, the effect of employee misconduct on compensability depends upon the rule violated. Generally, if the rule limits the ultimate work to be performed, the act prohibited by the rule is outside the course of employment. If, however, the rule merely limits the method of accomplishing the authorized work, then ordinarily the prohibited act is within the course of employment. *See Goodyear Aircraft Corp. v. Gilbert*, 65 Ariz. 379, 181 P.2d 624 (1947). *Accord*, 1A A. Larson, Workmen's Compensation Law, § 31.00 (1979).

Although this distinction between ultimate work and method of accomplishing that work is easy to verbalize, it often is difficult to apply. Professor Larson warns that a

> tricky feature of this distinction is that it can, by a play upon words, be converted into a contradiction of itself. For example, it seems clear enough that if claimant's main job is to lift flour sacks, the raising of the flour sacks is the "thing" for which he is employed. If, in violation of instruction, he rigs up a rope hoist to do the job, it should be clear enough that his departure is merely from the method prescribed. Yet the argument will sometimes be seen that the violation is one of a rule limiting the "thing," because the "thing" for which claimant is employed is "to lift flour sacks by hand and not by hoist." Of course, by so blending ultimate object and method, one can convert all instructions on method into delimitations of scope of employment, and end by reducing the distinction to absurdity.

1A A. Larson, *supra*, § 31.21 at 6–19—6–20 (footnote omitted).

■ In this context, respondents argue that because the distinction is difficult to apply, this court should defer to the administrative law judge's conclusion that the rule limited the ultimate work to be performed. We disagree. The administrative law judge is the trier of fact. It is his exclusive prerogative to resolve conflicting evidence, and this court must accept his resolution if supported by any reasonable theory of the evidence. *See, e.g., Perry v. Industrial Commission*, 112 Ariz. 397, 542 P.2d 1096 (1975). In contrast, his conclusions concerning the legal effect of the facts he has found are conclusions of law, not of fact. In performing its appellate review function, this court must draw its own legal conclusions from the facts as found by the administrative law judge. *See Goodyear Aircraft Corp. v. Industrial Commission*, 62 Ariz. 398, 158 P.2d 511 (1945); *Williams v. Williams Insulation Materials, Inc.*, 91 Ariz. 89, 370 P.2d 59 (1962).

■ Applying this standard of review to this case, we must accept the administrative law judge's factual findings that the employer had an oral policy prohibiting riding double on forklifts, that claimant knew or should have known of this policy, and that the employer uniformly enforced it. Nevertheless, we hold that such findings fail to support the administrative law judge's legal conclusion that claimant's accident arose outside the course of his employment.

In *City Products Corp. v. Industrial Commission*, 23 Ariz.App. 362, 533 P.2d 573 (1975), the claimant, who was employed to stack bags of ice on a conveyor belt, had to continue his work on the other side of the belt. The employer prohibited crossing over the belt, but the claimant climbed on it and was injured. Applying the law of employee misconduct to these facts, this court concluded that the prohibition did not limit the ultimate work to be performed, but only regulated the method of accomplishing an authorized result, and that consequently the injury was compensable.

Respondents attempt to distinguish *City Products* by arguing that claimant's misconduct in the present case was active, as opposed to passive. They assert that in this case claimant had to "walk over to a parked forklift, get on it, start the engine, and ride double," whereas in *City Products* the claimant had to "simply hop up onto a conveyor belt in an attempt to get to the

other side." The administrative law judge made no findings to support this description of claimant's misconduct, and we find no evidence of record to support it. To the contrary, the only evidence is that the co-employee used the forklift in the course of his employment and was driving it to his next assigned work site. The forklift, like the conveyor belt, was principally an instrument for transporting goods but, unlike the conveyor belt, was designed and used for transporting a human operator as well. Claimant, who had to follow the same route to his next assigned work site, rode double with the co-employee operator instead of walking, i.e., he merely exceeded the designed human transport capacity of the vehicle. Not only is the attempted factual distinction not supported in the record, it is a distinction which, in our opinion, does not indicate a result contrary to that reached in *City Products.*

Even if *City Products* (cited with approval in 1A A. Larson, *supra,* § 31.25 at 6–32, fn. 97) dictates a finding of compensability in the present case, respondents assert that this court should follow the *City Products* dissent, which takes the position that a rule regulating the *place* where work may be performed is one that limits the ultimate work to be performed, rather than the method of accomplishing that ultimate work. *See City Products,* 23 Ariz.App. at 365, 533 P.2d at 576 (*citing Thomas v. Industrial Commission,* 54 Ariz. 420, 96 P.2d 407 (1939); *Buehner v. Hauptly,* 161 N.W.2d 170 (Iowa 1968); *Hibberd v. Hughey,* 110 Neb. 744, 194 N.W. 859 (1923); *In re Fournier's Case,* 120 Me. 236, 113 A. 270 (1921)).

No Arizona decision has adopted a rigid "prohibited place" test—i.e., an injury is noncompensable if it occurred while the employee was in a prohibited place. Although it may be of some value in a proper case, it has no application to the case before us.

Here, claimant was not in a prohibited place. He was following his foreman's instructions to go from one work site to another, and he was on an authorized route at a place where and at a time when he should have been there. The employer's rule prohibiting riding double on forklifts regulated the method of accomplishing this assigned transfer, not the ultimate work to be performed. We therefore decline to adopt the dissent in *City Products.*

For the foregoing reasons, we conclude that claimant's misconduct was not of such a nature as to take him outside the course of his employment. Accordingly, the award for a noncompensable claim is set aside.

EUBANK and HAIRE, JJ., concur.