764 P.2d 33

Marlene Kay **BURNETT**, for Bruno **BURNETT** (deceased), Petitioner,

v.

The **INDUSTRIAL COMMISSION OF ARIZONA**, Respondent,

Circle K Corporation, Respondent Employer,

Circle K Corporation, c/o GAB Business Services, Respondent Carrier.

No. 1 CA-IC 3803.

Court of Appeals of Arizona, Division 1, Department B.

July 26, 1988.

Review Denied Nov. 29, 1988.

Mohr, Hackett, Pederson, Blakely, Randolph & Haga, P.C. by Michele M. Feeney, John J. Nicgorski, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Lewis and Roca by Merton E. Marks, R. Todd Lundmark, Phoenix, for respondent employer and carrier.

OPINION

BROOKS, Presiding Judge.

This is a special action review of an Industrial Commission award denying a widow's claim for benefits. The deceased employee was killed during an altercation with a customer. The central issue is whether the employee had abandoned his employment by violating store policy concerning disorderly customers. We set

aside the award because regardless of fault, Burnett remained within the course of his employment.

Bruno Burnett worked for the Circle K Corporation as a clerk in a convenience store in Winslow, Arizona. After his death, his widow filed a claim for compensation benefits. Circle K, which is self-insured, denied this claim. A hearing on compensability was then conducted.

According to a co-employee at approximately 12:45 a.m. on a February morning in 1986, Burnett was stocking candy with his back to the storefront when a group of men entered the store. One of them, David Thomas, who knew Burnett, threw a snowball and hit Burnett in the head. Thomas then turned from Burnett and proceeded toward the rear of the store.

Upon being hit, Burnett spun around, grabbed two candy bars, and threw them at Thomas, hitting him in the back of his heavy parka. Thomas turned, saying, in effect, that Burnett was taking the practical joke too seriously. Burnett answered by swearing at Thomas and loudly ordering him to leave the store or the police would be called. Thomas ignored the order and continued toward the rear of the store, but Burnett pursued him. He repeated the order and warning several times. The two men then stood face to face exchanging profanities and arguing for approximately five minutes.

Without warning, Thomas suddenly punched Burnett in the jaw. They then wrestled toward the rear of the store. Thomas, who was by far the larger man, held Burnett in a headlock and ended the fight by slamming Burnett's head into a cooler. As Thomas walked out of the store, Burnett brandished a foot-long metal pipe at him.

Meanwhile, the co-employee had called the police, who arrived shortly after Thomas left. An officer interviewed Burnett, whose face was bloody but who otherwise did not appear to be seriously injured. Burnett later died as a result of strangulation caused by the headlock applied by Thomas.

Two of Burnett's supervisors appeared at the hearing to determine whether the petitioner was entitled to benefits. The store manager who trained Burnett confirmed that Circle K's written policy specified that a clerk must "*actually* challenge ... persons creating any disorder. (Each Circle K store person must *show* he knows how to effectively challenge!)" The witness testified that he instructed clerks to order disruptive customers to leave and to inform them that the police would be called if they refused. He believed he gave Burnett the same training. Although he conceded that the appropriate response would vary with circumstances, he denied that a clerk ever had authority to throw merchandise at, to swear at, or to argue with customers.

The other supervisor was the store manager when the assault occurred. Although he could not recall giving Burnett specific instructions about store policy, he confirmed the basic outline of the other supervisor's testimony: a clerk had a duty to maintain order by telling a disorderly customer to leave or the police would be called, but did not have authority to act as the deceased employee had acted. He also testified that Burnett had a good performance record and was assigned to the late shift in part to prevent shoplifting in the store.

After receiving legal memoranda, the administrative law judge issued the award. The dispositive findings state:

7. Both ... [supervisors] testified about their understanding of defendant employer's policies regarding disorderly customers. Both agreed that the proper procedure was to tell such customers to leave or that the police would be called. If they did not leave, then the police should be called. Further, store policy would not condone throwing merchandise at customers, swearing at them, or fighting with them. This would not only violate store policy, but would go against common sense.

8. It appears reasonable to infer, that had store policy been followed and the police called when Mr. Thomas would not

leave the store, none of this would have happened.

9. It appears equally apparent that but for Mr. Burnett's violation of store policy—throwing candy bars at Mr. Thomas, swearing at him, and fighting with him,—Mr. Burnett would not have been injured. See *Scheller v. Industrial Commission,* 134 Ariz. 418, 656 P.2d 1279 (App.1982).

On this basis, the administrative law judge concluded that the death had not arisen out of and in the course of Burnett's employment. After affirmance on administrative review, this special action followed.

■ The widow first argues that Burnett's death was compensable by definition. Under A.R.S. § 23–901(12)(b), an injury arises out of and in the course of employment if "caused by the wilful act of a third person directed against an employee *because of his employment....*" (Emphasis added.) Given this definition, the widow suggests that it is unnecessary to separately satisfy the traditional elements of compensability. We disagree.

In this case, Burnett was assaulted because of his alleged provocation of Thomas. The assault occurred "because of [Burnett's] employment" only if this conduct remained in the course of the employment. Whether or not Burnett abandoned his employment is a central question which cannot be resolved without determining the course of his employment.

Circle K argues that Burnett abandoned his employment because its policy circumscribed the authorized ends of employment. In contrast, the widow contends that Burnett remained within the course of his employment because Circle K's policy merely regulated the means of accomplishing the authorized end of maintaining order in the store. In addition, she asserts that the administrative law judge did not address this critical means/ends distinction.

■ This latter point must be conceded. Although the administrative law judge cited *Scheller,* which is the primary authority for Circle K's argument, he merely concluded that Burnett would not have been injured but for his misconduct. Causation alone, however, cannot justify noncompensability. Indeed, misconduct is relevant only if there is a causal connection between it and the injury. *See, e.g., Schroeder v. Industrial Comm'n,* 132 Ariz. 455, 646 P.2d 886 (App.1982) (compensable claim despite misconduct resulting in injury); *City Products Corp. v. Industrial Comm'n,* 23 Ariz.App. 362, 533 P.2d 573 (1975) (compensable claim despite misconduct resulting in injury).

Inadequate findings are fatal, however, only if "the reviewing court is unable to determine whether the basis ... [for the administrative law judge's] conclusion was legally sound." *Cavco Industries v. Industrial Comm'n,* 129 Ariz. 429, 435, 631 P.2d 1087, 1093 (1981). The only factual dispute in the present case concerned the scope of Circle K's written policy. The administrative law judge resolved this dispute by finding that the authority to "challenge" disorderly customers did not include arguing with or physically confronting them. Given this finding, the applicability of the means/ends misconduct rule is a question of law that this court may independently assess. *See Schroeder,* 132 Ariz. at 458, 646 P.2d 886.

Turning to this legal question, we must decide whether the policy concerning disorderly customers circumscribed the ultimate work that Burnett was employed to perform or merely regulated the manner in which he was to perform that work. If the former, Burnett's misconduct removed him from the course of his employment; if the latter, he remained in the course of his employment despite the misconduct. *See, e.g., Goodyear Aircraft Corp. v. Gilbert,* 65 Ariz. 379, 181 P.2d 624 (1947); *accord,* 1A A. Larson, *Workmen's Compensation Law* § 31.00 (1985).[1]

---

**1.** Strictly speaking, this means/ends distinction applies to regulations of work performance, not of incidental activity. *See Bechtel Power Corp. v. Industrial Comm'n,* 139 Ariz. 135, 677 P.2d 298 (App.1984); *accord* 1A A. Larson, § 30.21. Because Circle K's policy regulated work performance, the distinction applies to the current case.

As previously noted, Circle K principally relies on *Scheller.* The claimant there was employed as a security guard for an apartment complex. Scheller was told to remain at his post, but that if he discovered a crime off-premises, he should observe what he could and then notify the police. He observed an attempted burglary off-premises, but instead of merely notifying the police, he gave chase and was injured. This court concluded that the express prescription to observe and report implicitly proscribed active intervention. *Scheller,* 134 Ariz. at 421, 656 P.2d 1279. We also concluded that this proscription limited the course of employment:

> As noted above, the general rule is that action contrary to instructions precludes coverage, unless the prohibition merely relates to the manner of doing work rather than its scope or ambit. We feel that the instructions in this case fall in the latter category. This is not the case of an employee using a forbidden method of transport to accomplish his assigned task. Nor was it a case where the employee was taking a forbidden 'short-cut' to save time. *City Products Corporation v. Industrial Commission,* 23 Ariz.App. 362, 533 P.2d 573 (1975). Here the employee substantially attempted to enlarge the scope of his duties to chasing criminals burglarizing other premises rather than observing and phoning the police as he had been specifically instructed to do.

We find the case most closely on point to be *Thomas v. Industrial Commission,* ... [54 Ariz. 420, 96 P.2d 407 (1939)]. In *Thomas,* the claimant's employer had become dissatisfied with the amount of traveling about the state the claimant had done in his auditing. The supervisor told claimant in express terms that claimant was not to travel out of the office on state business without his express permission. Claimant then traveled to Tucson for some business in connection with his official duties. He lost control of his car while en route and suffered serious injuries. The Arizona Supreme Court held that the express prohibition showed that the claimant was not in the course of his duties while injured and affirmed the award denying compensation.

We find particularly important the Supreme Court's concern in *Thomas* that to allow an employee to recover while injured doing an act expressly prohibited by the employer would be to make the employee, rather than the employer, the manager of the business, with no power in the latter to protect himself from liability or loss. 54 Ariz. at 430, 96 P.2d at 411. In the case at bar, claimant could have been harmed even more seriously, or died, in the course of his pursuit of the criminals. Certainly, pursuing criminals involves a risk of injury comparable to, if not exceeding, the risk of injury to the claimant in *Thomas.* Similarly, the employer here should be able to protect himself against liability for that risk by express instructions to the employee.

> While certainly the actions of the claimant were commendable, that does not mean they are compensable. Where the employer instructs the employee to do one thing in a particular situation and he does the other, we cannot say his actions are reasonable under the circumstances.

*Id.*

■ The current case appears less difficult than *Scheller* because Burnett's misconduct was arguably more extreme; however, culpability is not at issue. The misconduct rule does not assess *fault,* but rather distinguishes between conduct within and without the course of employment. Strictly viewed along these lines, *Scheller* is by far the easier case. The prohibition there literally circumscribed the physical ambit of employment. Scheller was employed to protect the security of the apartment complex, not to police the neighborhood as a whole. Furthermore, increased risk alone cannot distinguish prohibitions limiting ends from those regulating means. Safety regulations, for example, are imposed to protect both the employer and employee from liability or loss, but these unquestionably regulate means, not ends. *See, e.g., Schroeder* 132 Ariz. at 459, 646

P.2d 886 (rule prohibiting riding double on forklifts regulated means, not ultimate work to be performed); *accord* 1A A. Larson, *supra* § 31.22.

■ In this case, Thomas created a disturbance when he assaulted Burnett by throwing a snowball at him. Store policy not only authorized, but required Burnett to "challenge" Thomas. Testimony at the hearing established that Burnett's proper response would have been to order Thomas from the premises, and, upon refusal, to summon the police. However, the fact that Burnett employed unauthorized means, did not alter the ultimate goal sanctioned by his employer, i.e., restoration of order.

Even if Burnett's reaction was unreasonable and he, in effect, became the aggressor, the aggressor defense does not apply in Arizona:

Arizona's workmen's compensation laws were enacted to provide the workman with compensation for injuries arising out of and in the course of his employment. A.R.S. § 23–1021. The concept of fault and other common law doctrine based on fault have been eliminated in the employment setting. To adopt the aggressor rule defense would interject back into the workmen's compensation laws such a fault concept.

. . . .

We therefore hold that where injuries are received as a result of a work related disagreement, the injuries arose out of and in the course of employment and are thus, by statute, compensable. We further hold that given the work-related assault, it is immaterial as to who was the aggressor for to base a defense on such a distinction would be to interject a fault concept into the workmen's compensation laws, which concept is completely foreign to the purpose and intent of these laws.

*Colvert v. Industrial Comm'n,* 21 Ariz. App. 409, 411, 520 P.2d 322, 324 (1974); *accord* 1 A. Larson, *supra,* § 11.15(a) at 3–216 (1985) ("If the fight is spontaneous and closely entangled with the work itself —as most are—the assertion that claimant left his employment involves an outright fiction; and fictions should not be invented

to block the benefits conferred by a remedial statute.").

For the foregoing reasons, we set aside the award denying the widow's claim for benefits. We accordingly need not address the widow's remaining arguments concerning this denial.

KLEINSCHMIDT and EUBANK, JJ., concur.