787 P.2d 1103

**Serafin O. JAIMES, Petitioner,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Desert Hills Golf Course, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 89–029.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 27, 1990.

Ely, Bettini & Ulman by Joseph M. Bettini, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Christopher E. Kamper, Chief Counsel, State Compensation Fund by Robert T. Wilson, Phoenix for respondent employer & carrier.

OPINION

SHELLEY, Judge.

This is a special action review of an Industrial Commission award denying compensability. The administrative law judge (judge) found that the accident resulted from horseplay, and concluded that it had occurred outside the course of employment because "there seems to have been repeated misconduct particularly involving dangerous machinery and past warnings...." We must decide whether the horseplay constituted an insubstantial deviation as a matter of law. Because the deviation was insubstantial, we set aside the award.

Petitioner employee (claimant) was a golf course maintenance worker for respondent employer (Desert Hills). Desert Hills supplied a three-wheel utility cart for transportation of maintenance equipment and personnel from one part of the course to another. Although the cart had seats only for the driver and one passenger, no evidence was presented concerning a safety rule or custom restricting use of the cart to two workers.

On November 9, 1987, after completing work at one hole, claimant and two other workers set off in the cart on the normal route to another work area. One of the other workers (Rafael Garcia) drove; the other worker (Julio DeLeon) occupied the passenger seat; claimant, the judge found, sat on the dashboard facing the other two workers. In the course of this trip, claimant fell from the cart and sustained multiple serious injuries when it ran over him.

Claimant filed a workers' compensation claim for these injuries. Desert Hills re-

ported that claimant had fallen from the cart because of horseplay with the driver. Based on this report, respondent carrier State Compensation Fund (SCF) denied compensability. Claimant protested this denial, and hearings were scheduled.

Pending the hearings, an investigator for SCF telephonically interviewed Garcia. Garcia stated that claimant was sitting on the dash facing DeLeon. As Garcia was slowly making a turn, claimant was "tickling me in the stomach and I stopped paying attention ... I kind of let go of the [rudder]." As a result, the cart moved to one side, Garcia braked, and the shift in momentum caused claimant to fall. Garcia denied intentionally running over claimant or fighting with him.

At the scheduled hearings, claimant, Garcia, their supervisor, and the investigator appeared. Claimant testified that he was sitting in the passenger seat of the cart and had fallen when Garcia stopped to make a turn. He denied that any horseplay contributed to the accident.

Garcia testified that claimant was riding in the back of the cart and fell from it during the course of a turn. He nevertheless confirmed that claimant fell in front of the cart and that all three tires ran over him. Garcia also denied that any horseplay had occurred or that he had ever let go of the rudder.

The supervisor testified that he had not witnessed the accident but reached the scene within fifteen minutes. Claimant and Garcia had reported to him that claimant fell from the cart after being hit in the face with a golf ball. This account also appears in the initial hospital history. DeLeon, however, had reported that Garcia and claimant had been "batting" or "boxing" with one another and that claimant had stood up in the cart before he fell out. The supervisor also testified that Desert Hills has a policy against horseplay, that he had previously warned Garcia about horseplay, and that he had fired both Garcia and DeLeon for engaging in horseplay. Finally, the supervisor testified that although the physical evidence confirmed that the cart had run over claimant, it was difficult to reconstruct the mechanics of the accident.

The investigator described her interview with Garcia and confirmed that the transcription accurately reflected his statements. She also testified that Garcia never expressed any difficulty remembering the accident.

After receiving memoranda concerning the legal effect of horseplay, the judge issued the award. The dispositive findings state:

4. The best evidence is that Serafin Jaimes [claimant] was seated on the dashboard of the three wheeled truckster with his back to the course of travel. Rafael Garcia was driving and Julio De-Leon was in the passenger seat. Two days before the incident here involved, Phil Shoemaker, the course superintendent, had warned Rafael about "horseplay". A statement taken by Pat Young, State Compensation fund investigator, on February 1, 1988 over the telephone in Spanish of Rafael makes it clear that Serafin was tickling Rafael in the stomach and as a consequence Rafael let go of the "timon" or rudder. This it seems was just before Serafin fell and was run over by the cart causing serious injury. There is also some evidence the three were also playing with a horn on the cart. Upon learning of the horseplay, Mr. Shoemaker fired Rafael and DeLeon on the spot.

5. It is conceded that the three were in the usual path just going to the fourth tee. Horseplay that is an expected part of a job or which has been condoned may not be considered a deviation or abandonment and thus not out of the course of employment. However, where, as here, there seems to have been repeated misconduct particularly involving dangerous machinery and past warnings, it is believed the participants have taken themselves out of the course of employment.

This award was affirmed without modification on administrative review. Claimant then brought this special action.

On review, claimant concedes that this court must defer to the judge's factual

finding that horseplay caused the accident. But he asserts that the conclusion that the horseplay removed claimant from the course of employment is one of law and contrary to Arizona and other authority requiring a substantial deviation to deny compensation.

Claimant interprets two Arizona cases to establish the requirement of substantial deviation before a worker is removed from the course of employment. The first case is *Anderson Clayton & Co. v. Industrial Comm'n*, 125 Ariz. 39, 607 P.2d 22 (App. 1979). *Anderson Clayton* does establish that a substantial deviation involving departure from the work area without conceivable benefit to the employer removes the worker from the course of employment. *Id.* at 42, 607 P.2d at 25. But this case does not establish that a claim is compensable despite horseplay unless the deviation is substantial. Rather, after noting the absence of Arizona authority, the court merely assumed that regularly occurring horseplay may become a part of the course of employment. *Id.* at 41–42, 607 P.2d at 24–25 (citing *Industrial Commissioner v. McCarthy*, 295 N.Y. 443, 68 N.E.2d 434 (N.Y.1946)).

The second case cited by claimant is *Schroeder v. Industrial Comm'n*, 132 Ariz. 455, 646 P.2d 886 (App.1982). *Schroeder* similarly does not establish the limits of compensable horseplay. The claimant in *Schroeder* was injured while riding double on a forklift, a practice prohibited by the employer, but there was no evidence that riding double caused the accident. *Id.* at 456, 646 P.2d at 887. Although the administrative law judge described this activity as horseplay, the carrier did not defend this characterization and this court found insufficient factual support for it. *Id.* at 457, 646 P.2d at 888. Rather, the case involved work-related travel performed in an unauthorized manner and the legal analysis concerned the effect of this violation of a safety rule. *Id.* at 457–59, 646 P.2d at 888–90.

We accordingly reject claimant's interpretation of these cases as establishing the requirement of substantial deviation. A substantial deviation such as occurred in *Anderson Clayton* clearly is sufficient to bar compensation. It remains unsettled, however, whether such a substantial deviation is necessary to bar compensation. Furthermore, although both *Schroeder* and the current case involve work-related travel, there are significant dissimilarities as well. The current case involves horseplay, not a violation of a safety rule, and this horseplay caused the injury to occur.

Although Arizona has not yet adopted a substantial deviation requirement, it has accepted the premises underlying this rule. First, prior cases have rejected the aggressor defense in work-related assaults because fault is irrelevant to compensability. *See, e.g., Burnett v. Industrial Comm'n*, 158 Ariz. 548, 552, 764 P.2d 33, 37 (App. 1988); *Colvert v. Industrial Comm'n*, 21 Ariz.App. 409, 520 P.2d 322 (1974). The same analysis extends to participants in horseplay. *See* 1A A. Larson, *Workmen's Compensation Law* § 23.30 at 5–167 (1985). Second, the court in *Anderson Clayton* analyzed horseplay as a course-of-employment problem, not an arising-out-of-employment problem. *See Anderson Clayton*, 125 Ariz. at 41, 607 P.2d at 24 (citing 1A A. Larson, *supra*, § 23.61).

■ Having previously accepted these premises, we now adopt the following test to distinguish insubstantial deviations from actual abandonments of employment:

[W]hether initiation of horseplay is a deviation from course of employment depends on

(1) the extent and seriousness of the deviation,

(2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty),

(3) the extent to which the practice of horseplay had become an accepted part of the employment, and

(4) the extent to which the nature of the employment may be expected to include some such horseplay.

1A Larson, *supra*, § 23.00 (footnote omitted).

As Larson explains, this test incorporates the *McCarthy* rule extending coverage to participants if the horseplay has become a regular incident of employment (factor 3). It then extends this rule in two ways.

First, even if not a regular incident of employment, horseplay is covered if it is characteristic of the type of employment (factor 4).

Second, the test extends coverage to *isolated acts* of horseplay unless the deviation is substantial (factor 1): "the particular act of horseplay is entitled to be judged according to the same standards of extent and duration of deviation that are accepted in other fields, such as resting, seeking personal comfort, or indulging in incidental personal errands." *Id.* at § 23.61 at 5–180–81 (footnote omitted). Within this second class, it is necessary to distinguish cases in which the horseplay interrupts the duties of work from cases in which horseplay and work are commingled (factor 2). *Id.* at § 23.62(a) at 5–181.

As Larson notes, this distinction also is relevant in evaluating the effect of an actual or implied employer prohibition. A prohibition of activities not involving the direct performance of duties can remove the conduct from the course of employment. *Id.* at § 23.66 at 5–209; *see also id.* § 30.21. *See Bechtel Power Corp. v. Industrial Comm'n,* 139 Ariz. 135, 677 P.2d 298 (App. 1984); *Schroeder,* 132 Ariz. at 458–59, 646 P.2d at 889–90.

■ We turn now from the general test to the specific application of the test in this case. Even if the judge could have reached the same conclusion under this test, the award arguably should be set aside because he might have reached a different conclusion. *See* Levin, *Scope-of-Review Doctrine Restated: An Administrative Law Section Report,* 38 Admin.L.Rev. 239, 261 (1986) ("when an agency ... acted for an unacceptable reason, the ...·order may not be sustained on the ground that the record would have supported a finding based on a legally permissible rationale.") (citing, *e.g., American Textile Mfrs. Inst. v. Donovan,* 452 U.S. 490, 538–40, 101 S.Ct.

2478, 2505–06, 69 L.Ed.2d 185 (1981)). In *Pierce v. Casa Adobes Baptist Church,* 162 Ariz. 269, 273, 782 P.2d 1162, 1166 (1989), the trial court had concluded that the plaintiff's claim for loss of consortium because of injury to their son was precluded as a matter of law based on its interpretation of the standard set forth in two previous Arizona Supreme Court cases. The supreme court reversed the trial court because the trial court's interpretation of the standard of law was incorrect. This reversal occurred even though the record would have supported the judgment if the right rule had been applied.

The SCF does raise a related argument concerning the standard of review by suggesting that this court should defer to the judge's conclusion that claimant's horseplay deviation was substantial. The Larson test treats its ultimate application as a question of law to which the court applies independent judgment. In addition, our supreme court generally has treated course-of-employment questions as questions of law. *See, e.g., Finnegan v. Industrial Comm'n,* 157 Ariz. 108, 109, 755 P.2d 413, 414 (1988). *See also and compare Anton v. Industrial Comm'n,* 141 Ariz. 566, 569, 688 P.2d 192, 195 (App.1984) (independent judgment standard of review applied to conclusion that worker was independent contractor) *with Hunt Building Corp. v. Industrial Comm'n,* 148 Ariz. 102, 106, 713 P.2d 303, 307 (1986) (deferential standard of review applied to conclusion that worker was employee).

We accordingly apply our independent judgment to determine whether claimant's horseplay constituted a substantial deviation. In our judgment, it did not. The horseplay occurred during work-related travel. We agree with Larson that:

there should really be no controlling difference between the claimant who falls into a hole because he is walking along day-dreaming with his head in the clouds and the claimant who falls in the same hole because he is running, or skipping, or turning hand springs on his way to his destination. Both are doing their jobs in a thoughtless way.

1A A. Larson, *supra,* § 23.62(b) at 5–184. Furthermore, the crowding of three laborers onto a small cart was an employment condition conducive to horseplay. The judge's finding of repeated misconduct and past warnings is not borne out by the evidence as it relates to the claimant. The only evidence of prior misconduct and past warnings in the record involved Garcia only. Finally, "[t]he substantial character of a horseplay deviation should not be judged by the seriousness of its consequences in the light of hindsight, but by the extent of the work-departure in itself." *Id.* at § 23.63 at 5–191. In retrospect, the horseplay on the cart was dangerous, but however relevant this unreasonable risk of injury is to an assessment of negligence, it is irrelevant to compensability.

For the foregoing reasons, we conclude that claimant did not substantially deviate from the course of his employment and consequently that his injury is compensable even though the result of horseplay. We accordingly set aside the award.

CONTRERAS, P.J., and EHRLICH, J., concur.