NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

CORECIVIC INC, *Petitioner Employer*,

A I U INSURANCE CO, *Petitioner Carrier*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MICHAEL WALLACE, *Respondent Employee.*

No. 1 CA-IC 25-0030

FILED 06-16-2026

———————————————

Special Action - Industrial Commission
ICA Claim No. 20241100036
Carrier Claim No. CO-24-300568
The Honorable Kenneth Joseph Hill, Administrative Law Judge

**AFFIRMED**

———————————————

COUNSEL

Ritsema Law, Phoenix
By Bobby Wren
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent ICA*

Ahwatukee Legal Office PC, Phoenix
By David L. Abney
*Co-Counsel for Respondent Employee*

Matt Fendon Law Group, Phoenix
By Matt C. Fendon
*Co-Counsel for Respondent Employee*

————————————————

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

————————————————

**P A T O N**, Judge:

¶1 CoreCivic, Inc. and AIU Insurance (collectively, "Petitioners") appeal an Industrial Commission of Arizona ("ICA") award finding a compensable injury to Michael Wallace. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 On review, we consider the evidence in the light most favorable to upholding the award, *Lovitch v. Indus. Comm'n,* 202 Ariz. 102, 105, ¶ 16 (App. 2002), and we deferentially review all factual findings made by the Administrative Law Judge ("ALJ"), *PFS v. Indus. Comm'n,* 191 Ariz. 274, 277 (App. 1997).

¶3 Wallace worked as an assistant warden at the Central Arizona Correctional Complex in Florence, Arizona, which is operated by CoreCivic. The complex houses inmates and detainees for various jurisdictions and law enforcement agencies. Senior officers, including assistant wardens, were assigned each week on a rotating basis as the Administrative Duty Officer ("ADO"). The assigned ADO was responsible for responding to emergencies and was therefore "on call" 24 hours a day and required to respond to text messages and phone calls at any time. Being "on call" also required the ADO to be "of sound mind" and within 60 to 90 minutes' driving distance of the complex throughout the entire week. Additionally, the ADO was responsible for ensuring protocol compliance by making rounds both at the complex and offsite facilities where inmates were being treated. For example, the ADO was required to visit any inmate hospitalized offsite within 72 hours of admission and every 72 hours thereafter, until the inmate was discharged.

¶4            Wallace was the assigned ADO when he was injured on March 29, 2024. Wallace arrived at the complex around 7:30 a.m. and attended a morning meeting there. He then left in a company vehicle to check on hospitalized inmates and their accompanying guards. He visited four or five hospitals over the next few hours, then attended a community service event as required by CoreCivic. Afterwards, he returned the company vehicle to the complex and switched to his own car to conduct his last hospital check of the day at Florence Anthem Hospital ("Florence Hospital"). CoreCivic allowed ADOs to use their own cars or company vehicles for hospital checks. Because Florence Hospital was on his route home, Wallace chose to use his own car so he could go straight home afterward.

¶5            Wallace was on his way to Florence Hospital at around 8:05 p.m. when he heard an incoming text alert from his company-issued phone, which had fallen from the car's center console to the passenger floorboard. Wallace believed the message was from a shift captain who he had been communicating with throughout the day about an inmate engaging in self-harm. As he reached down to grab his phone, he lost control of the car. It swerved off the road and rolled over. The crash severed Wallace's spinal cord, rendering him quadriplegic.

¶6            Wallace filed a claim for workers' compensation, which Petitioners denied. It turned out there was no inmate to check on at Florence Hospital that day; the last inmate there had been discharged five days before the accident and prior to Wallace assuming the ADO role that week. It also turned out this information was contained in an email sent to a group of employees, including Wallace, a few hours before the accident. That email listed three currently hospitalized inmates, none of whom were at Florence Hospital.

¶7            The ICA held an evidentiary hearing to determine compensability. Wallace testified he could not remember why he thought there was an inmate at Florence Hospital but speculated he might have been thinking of the inmate who had been there a few days prior. He testified he did not see the email indicating that inmate had been discharged.

¶8            Wallace, his supervisor, and two other CoreCivic officers testified that a list of hospitalized inmates was sent out once or twice a week, but that ADOs also learned where inmates were hospitalized through other means, including through an offsite post checklist, emails from the medical department, visiting the shift supervisor's office, and

3

checking with security staff. Wallace testified that his usual practice was to check with the captains the day before making his rounds.

**¶9**     An ALJ found Wallace's injury arose out of and in the course of his employment. The ALJ found Wallace credibly testified that he was traveling to Florence Hospital to check on an inmate who he believed was there, even though "the weight of the evidence establishe[d] that there was not[]" an inmate there. Because "he was traveling to the hospital as part of his work duties" when the accident occurred, Wallace was injured in the course of employment. The ALJ therefore found Wallace's injury compensable.

**¶10**     Petitioners requested reconsideration, arguing that no reasonable evidence supported the ALJ's finding that Wallace was on his way to visit an inmate at Florence Hospital because there was no inmate there. Petitioners further claimed the ALJ created a presumption of compensability for any employee who simply "believed" he or she was working, thus shifting the burden to the employer to prove the employee was outside the course of employment. The ALJ summarily affirmed the award.

**¶11**     Petitioners requested special action review. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(2) and 23-951(A).

## DISCUSSION

**¶12**     To be entitled to workers' compensation, a claimant must show that his injury "arose out of and in the course of employment." *Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 381, ¶ 7 (App. 2009) (citation omitted) (internal quotation marks omitted); A.R.S. § 23-1021. Whether an injury "arose out of and in the course of employment" is a legal question we review de novo. *Finnegan v. Indus. Comm'n*, 157 Ariz. 108, 109 (1988). But we defer to the ALJ's factual findings unless unsupported by any reasonable theory of the evidence. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99 (1975).

**¶13**     Petitioners confirmed at oral argument they do not dispute that Wallace's injury arose out of his employment; they only contend that Wallace was not injured "in the course of" employment. Petitioners argue that the ALJ created a presumption that an employee was within the course of employment if he simply believed that he was. They claim this impermissibly shifted the burden to Petitioners to prove Wallace was not within the course of employment. Petitioners further contend the ALJ's

4

finding that Wallace was credible was not supported by substantial evidence.

¶14 "In general, an accident 'arises out of' employment if its origin or cause is work-related; it occurs 'in the course of employment' if the time, place, and circumstances of injury are employment related." *Bergmann Precision, Inc. v. Indus. Comm'n*, 199 Ariz. 164, 166, ¶ 9 (App. 2000). "An injury occurs in the course of employment if the employee was injured when he or she was doing what the employee 'may reasonably do within a time during which [the employee] is employed and at a place where [the employee] may reasonably be during that time.'" *W. Millwork v. Indus. Comm'n*, 256 Ariz. 177, 183, ¶ 26 (App. 2023) (citation omitted). And "an injury arising out of employment almost necessarily occurs in the course of it." *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349 (1970).

¶15 When "travel is essentially part of the employment, the risk [of injury during activities necessitated by travel] remains *an incident* to the employment" — even if the employee is not actually working at the time of the injury. *Bergmann*, 199 Ariz. at 167, ¶ 13 (citation omitted). Traveling employees therefore "remain within the course of employment continuously during their travel" absent "a distinct departure on a personal errand." *Id.* at 166, ¶ 10 (citation omitted).

¶16 The ALJ did not err in finding Wallace was within the course of his employment while driving to Florence Hospital. A substantial part of an ADO's duties included traveling to various offsite locations "all over the [] state" to ensure guards were following protocol. So for the assigned ADO, "travel is essentially part of the employment." *Id.* at 167, ¶ 13. And Wallace was injured while traveling to perform a hospital check, a duty required by his role as an ADO. *See Royall*, 106 Ariz. at 350 ("The type of activity which most clearly satisfies the 'course' test is the active performance by the employee of the specific duties which he was engaged to perform."); *cf. Burnett for Burnett v. Indus. Comm'n*, 158 Ariz. 548, 548-49, 552 (App. 1988) (employee remained in the course of employment despite throwing merchandise at and wrestling a disorderly customer in violation of store policy because he was attempting to restore order in the store, as required by his job duties).

¶17 Petitioners contend that this particular trip to Florence Hospital was unnecessary, so Wallace was not "actually" working; he only believed he was. But Wallace's job required him to travel to various hospitals and the ALJ made the factual finding that he was traveling to a hospital for a work purpose. Given this finding, to deny him compensation

merely because he was mistaken about where to go would inject a fault consideration into the no-fault worker's compensation system. *See, e.g.*, *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 96 (1990) ("[F]ault concepts have no bearing on whether or not worker's compensation should be awarded . . . .").

**¶18** Further, a traveling employee remains in the course of employment, even if he was not actually working at the time of injury, absent a "substantial deviation" from the course of employment. *CRST Int'l v. Indus. Comm'n*, 254 Ariz. 115, 119, ¶ 17 (App. 2022); *Bergmann*, 199 Ariz. at 167, ¶ 13. And "[t]o constitute a deviation, the activity must be 'so remote from customary or reasonable practice that . . . [it] cannot be said to be [an] incident[] of the employment.'" *Bergmann*, 199 Ariz. at 168, ¶ 19 (quoting 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 21.08[1], at 21-43). "Whether a deviation from covered employee travel is substantial is generally a question for the fact-finding body." *Joplin v. Indus. Comm'n*, 175 Ariz. 524, 526 (App. 1993).

**¶19** The ALJ found that the fact "[t]hat [Wallace] was mistaken about an inmate being at the hospital [wa]s not sufficient to remove [him] from the course of the employment." Petitioners argue this finding shows that the ALJ improperly put the burden on Petitioners to prove Wallace was not within the course of his employment. Not so. By concluding Wallace was not "remove[d]" from the course of employment, the ALJ inherently found that Wallace did not substantially deviate from his course of employment by acting on a mistaken belief that there was an inmate at Florence Hospital. And this finding is not clearly erroneous.

**¶20** The ALJ found that Wallace credibly testified that he was driving to Florence Hospital because he believed there was an inmate there, even though he could not remember why he believed so. The ALJ "is the sole judge of witness credibility." *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984). And, contrary to Petitioners' assertion, sufficient evidence supports the ALJ's credibility finding. Wallace's supervisor testified that he knew Wallace to be honest and truthful. Wallace was in fact on a route that led to Florence Hospital on a day that he needed to complete hospital checks. Florence Hospital was one of the locations where inmates could be hospitalized; indeed, an inmate had just been discharged from there a few days earlier. Wallace testified that he did not see the email listing the current offsite inmates, as well as indicating that the Florence Hospital inmate had been discharged. Other CoreCivic employees confirmed that the email was not the only source of communication regarding where inmates were hospitalized. Further, Petitioners acknowledged at oral

argument that Wallace had no personal reason to go to Florence Hospital. *See State Comp. Fund v. Keefe*, 22 Ariz. App. 311, 314 (1974) (finding employee's magazine writing was within the course of his employment and "not merely for his own personal enjoyment"). On this record, Wallace's conduct was not "so unreasonable that it amounted to a deviation from the course of employment." *See Bergmann*, 199 Ariz. at 168, ¶ 18.

**¶21** In their reply brief, Petitioners argue that Wallace's injury is not compensable under the "going and coming rule," which provides that "[a]ccidents that occur when an employee is going to or from work ordinarily are not within the course of employment." *CRST*, 254 Ariz. at 120, ¶ 23 (citation omitted). But "issues not 'clearly raised' in the opening brief are waived." *Meiners v. Indus. Comm'n*, 213 Ariz. 536, 538 n.2 (App. 2006). Waiver aside, their argument fails. The going and coming rule "applies when 'the employee has a definite place and time of work.'" *CRST*, 254 Ariz. at 120, ¶ 23 (citation omitted). Wallace did not have a "definite place and time of work" during his ADO week. He was on the job as a traveling employee—and therefore in the course of his employment—when he was injured. *See id.* at 120-21, ¶¶ 22-24.

## CONCLUSION

**¶22** We affirm.

